## WILLIAM H. WATERMAN, Appellee.

*vs.*

## ACHAS P. DUTTON, ET. AL., Appellants,

APPEAL FROM THE RACINE CIRCUIT COURT.

A court in equity will reform a contract, by correcting a mistake or supplying an omission, to make it correspond with the real intent and meaning of the parties; and will, also, in the same suit, proceed to decree a specific performance of the contract thus reformed.

An agreement for the sale of premises, on the one part, and on the other to procure for the mortgagor the release of an over-due mortgage, is not void for want of mutuality. The condition is not impossible of performance, as in such a case, the mortgagee can be compelled to release on payment of the amount due.

When no time is mentioned in an agreement for its performance, a *reasonable time* is to be understood.

What is a reasonable time for the performance of an agreement, wherein no time is stipulated, depends upon the circumstances of the particular case.

One of several partners who was present and assented to the signing of the firm name to a written proposition for the sale of the real estate of the firm, verbally undertook to abide by any arrangement his co-partners should make in completion of the negotiation. *Held*, that on the acceptance by the vendee of said proposition, such partner was bound by the contract afterwards executed in the firm name by his co-partners in his absence, for the sale of the estate substantially in conformity with the written proposition.

A partner may, by his own acts, ratify a sale of the real estate of the firm, made by his co-partners in his absence, so as to be estopped from alleging that he was not a party to the sale.

A person wrongfully in possession cannot maintain a charge against the owner for improvements made upon the premises.

This was a bill in equity for the purpose of reforming and compelling the specific performance of a real contract. The appellants and appellee were respectively pier owners and warehousemen in the city of Racine, and with a view to unite or consolidate a business deemed inadequate to the support of two establishments, in the month of February, 1855, negotiations were set on foot resulting in the following proposition in

writing from the appellants to the appellee, viz: "Messrs. "Dutton & Raymond hereby offer to sell to Wm. H. Water- "man their pier, warehouse and lots occupied thereby, situated "in the city of Racine, and all the furniture, fixtures, engine "and cars, and all articles now in and used in the warehouse, "except one safe and one desk, for the sum of six thousand "dollars, the payments to be well secured; terms of payment "to be agreed upon, and all to be made in, or secured by, "amply secured paper; and the said Dutton & Raymond will "give bonds not to carry on the pier business, nor build anoth- "er pier during the term of five years, and will not do a gene- "ral forwarding business in the said city of Racine, except on "the river. And the said Dutton & Raymond hereby offer to "pay to Wm. H. Waterman the sum of five hundred dollars "per annum for and during five years, in case he will give "acceptable bonds not to carry on the pier business, nor allow "such business to be carried on at his pier, at Racine. The "annual payment of $500 to be secured by good paper; said "Waterman not to do a general forwarding business in the city of "Racine, on the lake shore, but this is not to extend to the "river.

  Signed,      DUTTON & RAYMOND."

The appellants were partners doing business under the name and firm of Dutton & Raymonds, and the foregoing proposition was signed by Dutton, in the presence, and with the assent of all the members of the firm, and was deposited with Henry T. Fuller, that the appellee might have a few days to decide upon the same.

The said Seneca Raymond, having said he would abide by any arrangement his copartners should finally make in respect to said proposition and trade, left the city of Racine, tempora- rily, and in his absence, said Dutton and Elisha Raymond, and said Waterman, and Marshall M. Strong, as his, said Water- man's agent in the matter, met at the office of Strong & Fuller in Racine, for the purpose of completing said negotiation; and when there the said Strong, taking the proposition in his hand and reading the same over aloud in the presence of the parties,

remarked that the terms of payment were not definitely fixed, and asked the said Dutton and Elisha Raymond, if the said complainant should procure discharges of two mortgages executed by said Elisha and said Seneca to one Latham Cornell, and of another mortgage executed by the said parties to one Charles R. Cornell, and should deliver the same to them, it would be a satisfactory payment; and that said Dutton and Elisha both replied it would be entirely satisfactory,—and as it was supposed said mortgages, with the accrued interest thereon, would amount to about $6,400, said Elisha and Dutton agreed that whatever balance there should be on said mortgages over $6,000 they would pay the complainant. And thereupon said Strong, as the agent and attorney of said Waterman, and in his presence, told the said Elisha and Dutton, that Waterman accepted, upon the terms of payment above stated, the proposition contained in the first paragraph of the appellants' written proposition. And thereupon said Strong, at the request of said parties present, proceeded to draw up a contract in writing between the appellants as vendors of the one part and said Waterman as vendee of the other part, which was then and there executed by the said parties, as follows:

"An agreement made between Elisha Raymond, Seneca "Raymond, Achas P. Dutton, partners in business under the "style of Dutton & Raymond, party of the first part, and Wil- "liam H. Waterman, party of the second part, witnesseth: "That the said party of the first part, hereby agree to sell to "the said party of the second part, his heirs and assigns for- "ever, their pier, warehouse, and lots occupied thereby, situa- "ted in the city of Racine, and all the furniture, fixtures, "engine, cars, and all articles now in, and used in the ware- "house, except one safe and one desk, for the sum of six thou- "sand dollars to be paid by procuring a release and discharge "for that amount, from Latham Cornell or Charles R. Cornell "or both of them of their claims against the said Elisha Ray- "mond and Seneca Raymond; and the said Waterman hereby "agrees to purchase said premises, and to pay for them on the "terms above stated, and it is virtually agreed that said Water-

"man shall take the contract made by said Dutton and Ray-
"monds with George Fellows, for sixteen thousand feet of
"plank off from the hands of said Dutton and Raymonds, and
"also to take 100 spiles contracted, or to be contracted by said
"Dutton and Raymonds at the contract price.

     "Racine, Feb. 14, 1855.     [Signed]
                         "DUTTON & RAYMONDS,
                         "WM. H. WATERMAN."

    "This contract was intended by the parties thereto, to cover,
include and provide for all and every part and provision of,
and the entire proposition" made by Dutton & Raymonds to
Waterman, and by him accepted; but by the carelessness,
oversight, and neglect of Strong in drafting it, all that part of
said proposition relating to D. & R. giving bonds not to carry
on the pier business, or build another pier, during the term of
five years, was overlooked and left out of the contract.

Waterman opened negotiations with the Cornells, (one resid-
ing at Troy and the other in New York), for the discharge of
the mortgages according to the contract, pending which, and
on the 6th day of March, Dutton and Raymonds served on
Waterman a written notice that they had prepared and execu-
ted to him conveyances of the property sold, ready to be deliv-
ered, and demanding the release of the mortgages as a condi-
tion precedent to the delivery of the conveyances—that as a
reasonable time had then elapsed for the performance of the
agreement by Waterman, and he not having procured and
delivered the discharges of the mortgages according to contract,
they, D. & Rs. then declared the contract forfeited and at an
end.

On the 8th of March Waterman notified D. & Rs. that he
should be ready to fulfill his part of the contract as soon as the
discharges of the mortgages could be obtained by mail from
New York, and from Troy, and forbidding the defendants from
working on, or intermeddling with the premises; and on the
12th of March, 1855, Waterman tendered to D. & Rs. a dis-
charge of the mortgage to Latham Cornell, and on the 13th, he
also tendered a discharge of the mortgage to Chas. R. Cornell,

and demanded performance on the part of Dutton & Raymonds.

On the 15th day of February, 1855, Waterman entered into possession of the property purchased, and made improvements, and continued in possession, and in the prosecution of the improvements until the 7th day of March, 1855, when his men were ordered off by Dutton & Raymonds; since which they, D. & Rs. had possession.

Since the appellants resumed possession, and pending the bill in this case, to-wit, in August, 1855, the pier in question was damaged by a severe storm, so that it became useless until repaired; which repairs were made by appellants, as they set up in an amended answer.

The testimony in relation to the mistake in drafting the contract for the sale, was in the evidence of the person drafting it, as follows:

" Answer. In drawing up the contract, I left out by mis- "take, these words: ' And the said Dutton & Raymonds will "give bonds not to carry on the pier business, nor build " another pier during the term of five years, and will not do a " general forwarding business in the said city of Racine except " on the river.'" In reply to the question: " How did the "mistake occur?" he said: " I was interrupted while drawing " the contract, by the parties settling as to personal property, " mentioned in the contract, and settling as to the contract with "Fellows, and the contract for piles, and I was not well at the "time, and was very much fatigued. I cannot account for the " mistake in any other way."

Strong also testified: "The contract, after being drawn by " me, was read over by me to the parties there, and then signed " by them as above stated. It is possible that I read it " in parts, but it was all read to them. Defendant, Seneca Ray "mond, was not there."

All the appellants, including Seneca Raymond, and their wives joined in the deed of the premises, which was tenderd to Waterman on the 6th of March, 1855; coupled with a demand of performance on his part.

Much testimony appears in the case, including written

exhibits, relating to the performance on the part of Waterman, and to work done by him on the pier, which it is unnecessary to notice here; and upon which testimony, the bill, and the answer of appellants, the case came to a hearing on the 7th day of January, 1857, when a decree of the circuit court was rendered for reforming the contract, and for a specific performance thereof as corrected and reformed, &c.

*H. T. Sanders* for appellants.

The agreement between the parties is a mere voluntary agreement for the sale of land, not valid in law; it is without consideration; a bill will not lie to enforce a mere voluntary agreement. *Minturn vs. Longdale,* 4 J. Ch. R., 500. *Coleman vs. Searle,* 3 Br. Chy. R. 12; 1 Vesey, jr., 50; 1 Mad. Ch. R., 564; 6 J. Ch. R., 822; 1 Fonb. Eq., B. 1, chap. 3, § 1, et note.

The agreement on the part of the appellee to pay, by procuring a release and discharge for the amount ($6000), from the Cornells, of their claims against the Raymond, is a mere voluntary promise and could not be enforced at law against him; before he could procure a release, the Cornells must consent, so that no valid consideration passed. A written contract must have the same effect in equity as at law. *Harrison vs. Talbot,* 2 Dana, 254. *Acker et al. vs. Phoenix,* 4 Paige, 305. *Bond vs Long* 4 Yerger, 68. *Baker vs. Glass,* 6 Munford, 212.

The agreement is not mutual, in this, the appellee agreed to purchase and pay, by procuring a release from Latham Cornell, or Charles R. Cornell, or both of them, of their claims against the said Elisha Raymond and Seneca Raymond. The appellee had no control of the Cornell claims; he could not compel them or either of them to release; upon their refusal, the appellee could not perform the agreement on his part. In equity, the contract or agreement sought to be enforced must be mutual, and the tie reciprocal, or a court of equity will not interfere. 1 Harrington Ch. R. 124; 1 John. Ch. Rep. 282, 378, 390; 1 Mad. Ch. Rep. 1. When a party agrees to do an act, or agrees to procure others to do an act which is not within

his control; or under his power, a court of equity will not compel a specific performance. 1 Mad. Ch. Rep. 13. Without mutuality, a contract is void in equity. Equity is equality, and this equality constitutes equity. 1 Story Eq. Jurs., § 64.

The court cannot reform the contract as to defendant Seneca Raymond; he was not a party to the agreement of the 14th of February, and it materially varies from the first proposition. The joining in the deed by him relates back to the first proposition, and not to the agreement of the 14th of February, 1855. He is not proved to be a party or privy to any of the intermediate transactions. The court cannot, by intendment, make him liable. By the statute of frauds, the appellee will not be permitted to vary or alter the contract by parol evidence, and by this kind of evidence to make Seneca Raymond a party, and then ask for a specific performance.

The court, in the exercise of a sound discretion, has power to reform a contract in case of mistake, or fraud, but this power will not be exercised, unless the party seeking the relief has superior equities. Story's Eq. Juris., 176. In this case the equities of the appellee are inferior to those of the appellants, for the reason that the appellants could not compel specific performance on the part of the appellee.

A court of equity will not reform a contract unless the mistake be clearly and unequivocally proved; this rule is strictly applied when the answer denies the allegations in the bill. 1 J. Chy. R., 252; 1 Fonb. Eq. B. 1 Ch. 1, § 7; Story's Eq. Juris., 60, 61; Id. 152; *Shelburn vs. Inchequin*, 1 Brownson R., 342; Sugden on Vend., 259. Nor will a court reform a contract unless it carry out the intention of the parties.

In order to reform a contract the proof must be collateral, to explain, modify, or alter some part of the agreement. The evidence that "the said defendants would give bonds not to carry on," &c., is not collateral to the agreement. Parol evidence collateral to the agreement is admissible, but no evidence of matters not mentioned or referred to in the writing is admissible to alter the terms and substance of the contract. Sug. on

Vend., 225; 4 Vessey, 510; *Gawen vs. Sterne*, 2 Wheat. R. 65; *Elder vs. Elder*, 1 Fairf., 80.

The parties did not understand that the scrivener had made a mistake in drawing the contract. First, because it was read to them. Second, because no mention was made of the bond when the deed was tendered. Third, because appellee did not demand a bond when he subsequently tendered performance.

In order to compel specific performance of this agreement against all the parties, the court must decide that a void contract can be made valid by parol.

*John W. Carey*, for appellee.

The complainant in equity may allege a mistake in a contract for the purpose of reforming the same, and at the same time ask a specific performance of it as reformed. 3 Cow. & Hill's Notes to Phil. Ev. Note. 998, and cases cited. *Keisselbrack vs. Livingston*, 4 J. Ch. R. 144; 1 Story Eq. Juris., §161, and cases cited. 1 Peter's Rep., 1; 2 J. Chy. R., 585; 9 N. H. Rep. 391, 393; 11 Vt. R., 138; 9 Id., 299; 1 Br. Chy. R. 52.

The proof in this case clearly establishes the fact that, in reducing the contract to writing, a material part of it was omitted, through inadvertence of the scrivener, who drew it, to wit: "That the said defendants would give bonds not to carry on "the pier business, nor build another pier during the term of "five years, and would not do a general business in the said "city of Racine, except on the river."

The partial restraint here provided for is not against public policy. Smith on Contracts, 295; Comyn on Contracts, 484; Chitty on Contracts, 576;

The contract set out in the bill as reformed, is a valid, legal and binding contract on all the parties, clear and specific in its terms, and was properly and sufficiently executed by the parties thereto.

1. A contract to convey lands belonging to partners, subscribed by the firm name by one of them, under a parol author-

ity from the others, is valid and binding against all. So also, if there was no authority in the instance, but a subsequent ratification. *Lawrence vs. Taylor*, 5 Hill, 107; Dunlap's Paley's Agency, 171, and note.

2. The contract in this case was executed by Dutton, in the presence and with the assent of Elisha Raymond, and was subsequently ratified by Seneca Raymond, by joining with his wife and the other defendants in a deed of the premises to complainant.

The proof shows a full and complete performance of the contract on the part of the complainant.

The defendants having knowingly and wrongfully, in violation of their own agreement, retained possession of the warehouse and pier, in violation of the complainant's rights, should be held to account for the whole rents and profits thereof, without any deduction for expenses incurred in repairs made by them; having acted throughout in their own wrong. 2 J. Chy. R. 585; Story's Eq., 109, 106.

*By the Court*, COLE, J. After a careful examination of the decree of the circuit court rendered in this case, we are of the opinion that it should be affirmed.

There does not seem to be any room to doubt but courts of equity in this country will reform a contract, so as to make it correspondent with the real intent and meaning of the parties; and will, also, in the same suit, proceed to decree specific performance of the contract thus reformed, in favor of the party asking reformation and performance of the contract, if it would be equitable and proper to do so. The principles upon which courts proceed in cases of this nature, are so fully and ably discussed in the authorities referred to in the notes to chapter 5th of Story's Eq. Jurisp., that it is only necessary to consult those cases for the law upon this subject. It will be observed from those cases that, whatever may be the rule adopted in England and in some of the States, upon this ques-

tion, the decided weight of authority in this country is in favor of the exercise of such jurisdiction by courts of equity. Sound reason and justice appear to be in favor of such a practice, and we therefore conclude to follow it in cases where substantial equity will thereby be accomplished.

In the present case there can be no kind of doubt but the attorney, Mr. Strong, in drawing the contract of Feby. 14th, 1855, by mistake left out a most material part of it. The evidence upon this point is clear and satisfactory. Strong testifies—and his testimony is wholly uncontradicted in this particular—that in drawing the contract, by mistake he omitted the following words : " And the said Dutton and Raymonds will give bonds not to carry on the pier business, nor build another pier during the term of five years ; and will not do a general forwarding business in the said city of Racine, except on the river." The case showed that this was an important condition in the contract, and it was embraced in the preliminary written proposition submitted by the defendants to the complainant. Mr. Strong says that " after the defendants " had agreed to take the Cornell mortgages in payment, and " after we had ascertained the amount due upon them, I " accepted for the complainant, unconditionally, the proposi- " tion contained in the first paragraph of defendant's proposi- " tion, exhibit 'A.' It was that proposition, and the accep- " tance of it, which I was directed to put in writing." No clearer case of a plain, palpable mistake in drawing an agreement can be presented, and the contract should be reformed so as to make it correspond with the intent of the parties.

But it is objected that this contract is not such an one as ought to be enforced in a court of equity. And first it is insisted that the agreement between the parties is a voluntary one, for the sale of land, and not valid in law, being without consideration.

We are unable to appreciate the force of this objection, when applied to this contract. For it appears to us that the defendants, in as clear and distinct a manner as language is susceptible of doing, agreed to and with the complainant to sell to him their pier, warehouse and lots occupied thereby in

the city of Racine, and certain furniture, for the sum of six thousand dollars to be paid in a certain specified manner. With what propriety such an agreement can be said to be voluntary and without consideration we are unable to understand. The consideration was six thousand dollars, and as far as we are able to judge it was a full, adequate and complete compensation for the property purchased. At all events it was the price the defendants placed upon their property, and they cannot complain if a court of equity holds it to be a sufficiently valuable and good consideration.

Another objection taken to the contract, was that it was not mutual, since the defendants could not have compelled the performance of its conditions, had not the complainant been disposed to comply with them. The complainant agreed to pay the six thousand dollars, the purchase money, by procuring releases of certain mortgages for that amount, which the Cornells held against the defendants. It is said that the complainant could not control the action of the Cornells, and had no power to compel them to give the proper releases. It is a sufficient answer to this objection to say that it was not an impossible condition which the complainant agreed to perform. The Cornell mortgages were already due, and the complainant could compel them to discharge them on paying them off. This part of the contract the complainant did perform within a reasonable time. No time was specified in the contract within which the complainant was to procure these releases, and under the circumstances of the case, we think he was very prompt in obtaining them. And we are of the opinion that there is as little ground for objecting to a specific performance of the contract for the reason that it was not signed by the defendant, Seneca Raymond. It is not denied in the answer that Seneca was present when the first proposition was made to the complainant, knew of that proposition, and assented to its conditions. And whether he authorized his partners to bind him by entering into the contract of the 14th of February, or not, (a contract substantially in conformity to the preliminary proposition) it is quite immaterial to inquire,

since the evidence is most condusive that Seneca saw fit to ratify the contract of the 14th of February, by signing and executing a deed of the property to the complainant in compliance with it. The contract then being, as we consider it, an equitable one, mutual between the parties, and for a good and valuable consideration, should be decreed to be specifically performed.

It is proper, perhaps, before dismissing the case, to make a remark upon a clause of the decree rendered in the court below, which, it is suggested, is not entirely clear and distinct in its meaning. The circuit court, after decreeing that the contract should be reformed, by adding to it the clause inadvertently left out, in reference to giving the bond conditioned as therein stated, and that the contract, as reformed, be specifically performed, also proceeds to order that an account be stated between the parties, upon certain principles mentioned in the decree. And the commissioner taking the account, was directed, among other things, to credit the defendants with the necessary repairs made to said premises for the benefit and protection of them. That is, the defendants were to be allowed for such expenses as they had incurred in keeping the property from going to decay. They were in possession in their own wrong, and if they made improvements upon the property in order to render the use thereof more valuable to them, or because they fancied such improvements were necessary, or might enhance the value of the property, or made repairs which were not necessary for the protection and preservation of it, they ought not to be compensated for any such improvements. The defendants set up in their amended answer that the pier was damaged by a severe storm, and unavoidable accidents, and was useless until repaired, and that they expended five thousand dollars in repairing it. If the pier was washed away or destroyed while the defendants were in wrongful possession of the premises it would be most inequitable to permit them to build another pier and charge the expense to the complainant. We do not suppose that the circuit court contemplated by its decree to allow them for

any such expenditure, but only for such repairs as were necessary for the due protection and preservation of the property. If the ware-house had been burned down while the defendants were in wrongful possession of the premises, and they had erected another one it would not have been contended that they should have been paid for the building thus erected by them. And for a like reason, if the defendants built a new pier after the old was destroyed, or made any expenditure in repairing it which was not strictly required for the preservation and protection of so much of the pier as remained, they should not be allowed for it; and as we underderstand the basis upon which the circuit court directed the account to be stated, they cannot be credited with it.