BENSON, Administratrix, vs. CUTLER.

*September 27 — October 18, 1881.*

SPECIFIC PERFORMANCE, *of contract for sale of land, after breach by plaintiff. Equitable conditions.*

1. The enforcement of specific performance of a contract of sale rests largely in the sound discretion of the court, in view of all the circumstances.

2. Upon the facts of this case (stated in the opinion), specific performance of such a contract is awarded, upon payment by plaintiff of the amounts justly due defendant on the contract, although the payments are long past due, and although the contract itself declares payment at the times therein named to be of the essence thereof.

3. Under the circumstances of this case, defendant is entitled to be repaid sums spent by him, in good faith, in needful or desirable improvements upon the land, after plaintiff's default in making payments, although a part of such improvements were made in disregard of plaintiff's expressed wish; and he is chargeable with all rents received and not accounted for.

APPEAL from the Circuit Court for *Waukesha* County.

Action by plaintiff as administratrix of the estate of James Benson, her deceased husband, to enforce specific performance of two contracts for the sale of lands. The contracts were entered into between the defendant and James Benson, and, together, embrace a lot in the village of Waukesha. One was executed in April, 1868, and the other in January, 1869. Each contains the following provision: " It is mutually agreed by and between the parties hereto, that the times of payment above mentioned are and shall be deemed as of the very essence of this contract, and that in case the party of the second part [James Benson], his heirs, executors, administrators or assigns, shall fail to make any of such payments at the time agreed on, or within ten days thereafter, he and they shall be deemed to have abandoned and given up to the party of the first part [defendant], his heirs, executors, administrators or assigns, all right, title and interest in and to the above described premises, and all right of action upon or growing out of this contract.

The view taken by this court of the evidence will sufficiently appear from the opinion. The circuit court, after finding as facts the execution of the contracts above described, further found as follows: "3. That, upon the execution and delivery of said first contract, said James Benson took immediate possession of the land therein described, and erected thereon a homestead house and outbuildings of the value of about $2,000, and from thence until on or about April, 1872, occupied the same with his family as his homestead. 4. That, shortly after the date of said second contract, said James Benson took actual possession of the land described in said second contract, and erected thereupon a building intended ultimately for a dwelling house, but then and up to 1872 only partly finished, and up to said last mentioned time used by him as a carpenter shop, his business being that of a carpenter and builder; said building then cost about $350, and was paid for by said James Benson. 5. That the payments called for by said contracts were not made in money at the times therein specified, but that defendant waived the time of payment, and gave an extension thereupon indefinitely to said Benson, in his lifetime, and to the plaintiff, after the decease of her husband. 6. That on or about the 4th day of November, 1875, defendant paid for and furnished to said James Benson brick and other building material, to be put into and on the said shop building, upon said north half of said lot No. 29, and which was by said Benson put into said building, during 1875 and the year following, to the amount and value of $560; said Benson was then changing and rebuilding said shop into a dwelling house; said transaction being shown by a bill of sale of said material from said Benson to *Cutler*, of date November 4th, 1875, and by a second bill of sale dated the 15th of November, 1875, covering the same personal property, but drawn with more particularity. *Cutler* thus furnished to said Benson material to the amount of $560, for which Benson has not paid him, and which is an additional charge in favor of

said *Cutler* upon said lands, with interest at seven per cent. from and since November 4th, 1875, and is allowed to the defendant upon the accounting. 7. That said *Cutler*, on or about the 4th of November, 1875, caused to be made out a quit-claim deed for said Benson and his wife to execute, conveying and releasing all of said premises covered by said two contracts to him, said *Cutler*, and caused the same deed to be presented to said Benson for execution, but that the same was never executed, said Benson declining to sign the same. 8. That James Benson never abandoned his said homestead, but removed therefrom temporarily, to Chicago, Illinois, in the spring of 1872, where he died on or about May 3d, 1877; and that the plaintiff was duly appointed his administratrix, and is now such administratrix. 9. That James Benson, in the fall of 1875, with the consent of the defendant, commenced the rebuilding of said shop on the north half of said lot 29, into a dwelling house, and expended thereon, including the material mentioned in the bill of sale set out in the 6th finding of fact herein, about eight or nine hundred dollars, all over and above the said sum of $560 mentioned in said bill of sale, being his own means. 10. That James Benson, from the time he went to Chicago in the spring of 1872, until in or about May, 1876, employed one Nelson Burroughs as his agent to lease and care for said premises, and that through his said agent he did lease the same and receive the rents thereof and pay the taxes thereupon up to May 1, 1876. 11. That on or about November 4th, 1875, said two land contracts were, with the consent of James Benson, delivered by Wm. Hawkins (their custodian for safe-keeping) to said defendant. 12. That on or about the first of May, 1876, the defendant became the agent of James Benson to collect the rents and take care of the property for Benson, and has had possession of the same ever since, and collected rent for the south half from May 1st, 1876, to May 1st, 1879, of C. C. Olin, Benson's tenant, at the rate of $200 a year — $600 in all; and that said Olin remained

in as such tenant without any new lease from any person, at the same rate, until after the testimony was taken herein, in or about July, 1879. 13. That defendant has paid the taxes on all of said property from 1876 to 1878, inclusive — the year 1876 being the first year for which he paid them. The sums thus paid for taxes, and any taxes subsequently paid, are allowed to the defendant upon the accounting, with interest thereupon from the date of each payment, at seven per cent. 14. That there never was a *surrender* or release of the property, or of the contracts, or of the right and title of James Benson in the property, by said James Benson or any other person, to the defendant. 15. That, on or about May 1, 1876, defendant obtained possession of all of said property by promise to collect the rents and take care of the property for James Benson. 16. That after the death of James Benson, and on or about August 15, 1877, the defendant wrongfully set up and claimed that said two contracts were forfeited, and had been, with all interest thereunder, surrendered to him by said James Benson in his lifetime. 17. That on or about the 15th of August, 1877, the plaintiff demanded of the defendant an accounting of and concerning the amount due to him upon said contract; that the defendant refused to so account, on the ground that he was sole owner of the property; but did state an account of what he claimed was then owing him by James Benson upon said two contracts, as well as what he claimed was then due him from said Benson upon various other outside demands and notes, amounting in all to $4,129.54, and he offered to *resell* said property to said plaintiff upon payment of the whole amount; and offered, if she would re-purchase, to throw off or deduct $500. 18. That the plaintiff, on said last named occasion, disagreed with the defendant as to the correctness of said account, and then notified the defendant not to put any additions or improvements upon said premises, as she claimed the right to redeem the same, and that he was not the owner thereof. 19. That after said notice the defendant put new and

permanent improvements upon both the north half and south half of said premises, amounting in value to about $3,000, of which he kept no detailed account — he claiming to be absolute owner; that he put the same on unnecessarily and in his own wrong, and not in good faith. 20. That James Benson, in his life-time, performed labor and expended money and material for said defendant to quite a large amount, claimed by the plaintiff to amount to $1,076.40, during 1869, 1870 and 1871, as shown by accounts produced and filed by the said plaintiff, and which are hereby allowed. The court finds as a fact, that it was agreed between James Benson and the defendant that whatever the balance of said labor and materials over and above payments thereon amounted to, should be applied as payment of and upon said contracts. The defendant produced an account before the referee, against the deceased, extending over 1868, 1869, 1870 and 1871, for moneys paid him and materials furnished, amounting to $678.75 on the 8th day of December, 1871, which said account is hereby allowed in full, and which, deducted from the account of James Benson, leaves the sum of $397.65 to apply on the aforesaid contracts, as of the date of December 8th, 1871. There is no evidence that said balance of account was ever paid by the defendant, except the verbal testimony of the defendant that he paid it to James Benson in his life-time. Such testimony is incompetent; this balance of account is therefore taken into the accounting, and is allowed to the plaintiff, to be applied on the contract as of December 8th, 1871. 21. The amount due to the defendant on this 8th day of December, 1880, upon said contracts and all other claims which are a just charge in favor of said defendant, is the sum of $2,282.28. This amount is arrived at by disallowing all of the claims of the said defendant for improvements and additions made by him on said premises, since about August 15th, A. D. 1877, the date when defendant was notified by the plaintiff not to make additions or improvements on said premises, as she should redeem."

As conclusions of law the court held that, "1. The two contracts were for sale of the lands, and were not leases.  2. Whether time was originally made material thereby, and whether the contracts might have been forfeited by the defendant for nonperformance of the conditions at the time therein specified, is now immaterial.  Defendant waived strict performance, and gave unlimited day of payment.  3. The plaintiff is entitled to redeem and have a conveyance of the property by paying the sum of $2,282.28 on or before the first day of April, 1881, with interest thereon from December 8th, 1880, at the rate of seven per centum per annum until paid; deducting therefrom the amount of the rental value of said premises, at the rate of $200 a year, to the time of such redemption. 4. The defendant is not entitled to pay or compensation for any building, additions or improvements put by him upon said premises since August 15th, 1877, when he was notified by the plaintiff to desist therefrom.  5. If the plaintiff shall pay or tender to the defendant, as herein provided, the sum of $2,282.28 within the time aforesaid, then the defendant shall convey the said premises as prayed in the complaint; otherwise the title thereto shall be and remain in the defendant, and all equity of redemption therein or thereto forever barred and cut off."

From a judgment in accordance with these conclusions, the defendant appealed.

For the appellant there was a brief by *J. V. V. Platto* and *W. S. Hawkins,* and oral argument by *Mr. Platto.*

For the respondent there were briefs by *Finches, Lynde & Miller,* her attorneys, with *David S. Ordway,* of counsel, and oral argument by *Mr. Ordway.*

COLE, C. J.  We concur with the learned circuit judge in most of the findings of fact in this case.  To our minds the evidence is perfectly clear and conclusive that Benson went into possession of the premises under his contracts as purchaser,

and made valuable improvements. There can be no doubt that the contracts were valid, and operated to secure a conveyance of the land by the defendant on the performance of their conditions by Benson. The instruments made the time of payment of the sums therein specified to be paid, of the very essence of the contracts; but the circuit judge found that the defendant waived a strict performance of the contracts in this respect, and gave an unlimited day of payment to Benson in his life-time, and to the plaintiff since his decease; and there is ample testimony to support that finding. The question, then, arises, Is there anything in the attending circumstances which would render it inequitable to enforce a specific performance of the contracts? For the law is well settled, that a specific performance of a contract of sale rests largely in the sound discretion of the court, upon a view of all the circumstances. *Williams v. Williams*, 50 Wis., 311. And the learned counsel for the defendant insists that the contracts should not be enforced for the reason that it appears from the evidence that they were cancelled, and all rights under them voluntarily abandoned, and the premises surrendered, by the arrangement of November 4, 1875, so as to make it inequitable to enforce them. We have carefully considered all of the evidence relating to that transaction, including the testimony of the defendant himself — which is of doubtful competency, and certainly should not receive the same degree of credit it would be entitled to were Benson alive to contradict it, if untrue; and we think it does not sustain this position of counsel. We shall not go into a discussion of the evidence in detail, but merely state that in our judgment it entirely fails to show that the contracts were at that time or at any other mutually abandoned, and the premises surrendered to the possession of the defendant. Indeed, the letters alone which were written by the defendant to Benson after that transaction, about the property, prove most conclusively that both parties regarded and treated the contracts as being still in force.

Benson continued to improve the property, and the defendant aided him by looking after the work, and, in some instances, settling with mechanics, as this correspondence shows. We see nothing growing out of the delay in making payments, or in any change of circumstances, which renders it unconscientious to enforce performance. We therefore fully agree with the circuit court in the conclusion that the plaintiff will be entitled to a conveyance upon paying the amount justly and equitably due upon the contracts.

But the circuit court held that the defendant was not entitled to any pay or compensation for any improvements put by him upon the property after August 15, 1877. This was doubtless upon the ground or for the reason that whatever improvements the defendant put upon the property subsequent to that time were made in bad faith and in his own wrong. There are cases which hold that where a party wrongfully retains the title and possession of property which he knows he ought to convey to another, he is denied pay for his improvements. *Waterman v. Dutton*, 6 Wis., 265; *Thompson v. Thompson*, 16 Wis., 91. We do not, however, think the facts of this case bring it within the rule above stated. It is admitted that the amount due on the contracts has not been paid in full. Some of the buildings on the property were in an unfinished condition and untenantable. From the spring of 1872 to the time of his death, in May, 1877, Benson had been living in Chicago, and the defendant had been looking after this property for him, collecting rents, and seeing to the improvements which were being made upon it. We infer from letters written Benson by the defendant, especially the one dated March 20, 1877, that the former had applied to the latter for a loan of money to complete these buildings. It was surely for the benfit of the estate that this should be done. The defendant might reasonably have concluded that it would be for the advantage of all concerned that he should make the improvements which he did make. Certainly there is no evidence of

bad faith on his part in making them, nor any ground for saying that he was attempting to improve the plaintiff out of her property. He doubtless did what he thought was for the best under the circumstances. There was more or less uncertainty about the intention, or at least the ability, of the plaintiff to pay the amount justly due on the contracts so as to be entitled to a conveyance. True, she says that in their conversation in August, 1877, she told him she did not want another dollar of improvements put upon the property; that she would in some way raise the money and pay up what was due on the contracts. But, considering her limited resources, the defendant might well have supposed that it would be some time before she could do this, and that it would be better to have the buildings completed so that they could be rented. Consequently, under the circumstances, we deem it fair and equitable that he should be paid the *actual value of such improvements as he himself made out of his own funds after August*, 1877. Of course, he should be charged with all the rents which he has received and not accounted for. We barely indicate the basis for stating the account between the parties.

In one other particular we are disposed to differ from the view taken of the case by the court below; it is in respect to the item of $560 building material which was put into the property in the fall of 1875. Now, as we understand the testimony, that material was actually furnished and paid for by Benson himself. For some purpose, not clearly disclosed, Benson went through the form of executing two bills of sale of that material to the defendant for a consideration of $560. The defendant says in his testimony that he paid for it in cash. We have already said, if his testimony was competent to prove the fact — a question we do not wish to be understood as deciding,— it is not entitled to the same credit it would be were Benson alive to give his version of the transaction. Unless the defendant did actually pay for this material, we see no reason for allowing him a credit for that amount in the account.

Upon the proofs in this record we are clearly of the opinion that defendant is mistaken when he says that he paid for this material in cash, and that he never did in fact pay a cent for it. We see no reason for allowing him credit for it in the account unless he did pay for it in cash, as he says. True, the plaintiff did not appeal from the finding of the circuit court in respect to that item; but, as the whole account must be restated and all errors corrected, we deemed it proper to express our views as to that item.

Without noticing in detail the many questions discussed by counsel, we have concluded to consider the case on the merits. Our conclusion is, that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*By the Court.*— So ordered.