OCONTO COMPANY, Respondent, vs. BACON and another, Appellants.

*February 9—October 19, 1923.*

*Vendor and purchaser: Breach of contract by vendee: Remedies of vendor: Election: What constitutes: Rights of vendee: Redemption: Relief from forfeiture: Quieting title as to cloud created by contract.*

1. Upon the breach of the conditions of a land contract the vendor has three remedies: (a) He may elect to sue for the unpaid purchase money; (b) he may elect to sue for specific performance of the contract; (c) he may elect to declare the contract at an end.

2. The election by the vendor of one remedy for the breach of a land contract waives the other remedies.

3. In determining what constitutes an election of remedies, any unambiguous act consistent with one and inconsistent with the other of the elective positions will be deemed conclusive evidence of such election.

Oconto Co. v. Bacon, 181 Wis. 538.

4. Where the vendor, after writing ambiguous letters evincing an intent to both cancel a land contract and to foreclose it, finally refused to accept tender of the amount due and brought an action to quiet title, his conduct was consistent with an election to declare the contract terminated.

5. A purchaser of land under an executory contract of sale has not an absolute right of redemption which he may lose only by foreclosure; and payments made by the purchaser are, unless he appears and shows grounds for equitable relief, where the contract so provides, forfeited to the vendor.

6. In an action by the vendor to quiet title and to declare the contract of sale at an end and to cancel the same, on failure of the purchaser to pay the price and to make improvements required by the contract, constituting a part of the consideration, the purchaser, having failed to perform his part of the contract and making no offer to perform, is not entitled to equitable relief against a forfeiture, since in such a case equity does not enforce a forfeiture, but fails to relieve against one because no equitable grounds for relief exist.

7. The vendor having elected to declare the contract at an end for nonperformance of its terms by the vendee and his assignee, the outstanding contract constituted a cloud on the title; and to remove it the vendor was clearly entitled, on well established principles, to the aid of a court of equity.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

Action to quiet title. In September, 1920, the defendant *Bacon* entered into a land contract with the plaintiff for the purchase of forty acres of land in section 31, township 33 north, range 16 east. By the terms of the contract *Bacon*, party of the second part, bound himself to pay the sum of $500 "in the manner following, to wit: payable $120 on or before June 1, 1921, 1922, 1923, and $140 on or before June 1, 1924, together with interest thereon from the date hereof, at the rate of six per cent. per annum, payable on or before June 1st of each year during the term of this contract, until the purchase price is fully paid; provided, however, said *D. J. Bacon* builds a log house and barn on said lands not later than June 1, 1921, and clears from brush and stumps five acres of said land before June 1, 1921." In a

subsequent clause of the contract *Bacon* agreed to erect a fence around the land prior to June 1, 1921.

The contract contained the usual clauses as to insurance, payment of taxes, and keeping of the premises in repair, and there was a clause providing that failure to pay any instalment of principal or interest when due, or the violation of any term of the contract, should render the whole of the principal sum due and payable. The plaintiff agreed that upon payment of the purchase price and the performance of the other covenants of the contract by the party of the second part it would convey the premises, subject to certain reservations relating to mineral rights, free and clear of all incumbrances.

The contract then provided:

"And it is distinctly agreed and understood by and between the parties hereto, that if the said party of the second part shall fail to make any of the payments of money or interest above specified, or shall violate any of the provisions of this contract, then and in that case this agreement shall, at the option of said party of the first part, be henceforth utterly void, and all payments thereon forfeited, subject only to be revived and renewed by act of the party of the first part, or the mutual agreement of both parties."

It is undisputed that *Bacon* made none of the improvements upon the premises which he agreed to make; that no sum of money was paid as a down-payment, and that no subsequent payments were made.

In the month of September, 1920, *Bacon* assigned his interest in the contract to the defendant *Flynn*. *Flynn* made no payments, nor did he make any of the improvements which *Bacon* had contracted to place upon the premises.

On July 7, 1921, the plaintiff wrote a letter to *Bacon*, reciting the terms of the contract, in which the following language was used:

"You have not done any of this—in other words, you have failed to comply with any of the provisions of this contract; therefore, the full amount of the sale price of

$500 is due now and must be paid immediately or the contract will be canceled.  As a matter of fact we will cancel the contract anyway.

"You will have to pay up and get a deed to hold this land.  By the terms of the contract you have forfeited the same at this time of writing.  This is notice to you that we will give you until July 14th to make full and final payment, including interest and all other charges assessed against the land."

In the letter it was also suggested that *Bacon* should execute a quitclaim deed releasing his interest in the premises.

On July 16th the plaintiff wrote *Bacon* a letter in which the following language was used:

"Inasmuch as you have seen fit not to answer our letters, and have failed to carry out the agreements contained in your land contract dated June 1, 1920, this is to notify you that the said contract is canceled."

A quitclaim deed was inclosed, to which reference was made in the letter, after which the following language was used:

"If we do not receive same by return mail, we will proceed to foreclose the contract, and will take judgment against you for the full amount of claim including costs and damages."

There was testimony in the case, which was undisputed, to the effect that the making of the improvements was a material part of the consideration, inasmuch as it made more salable lands in the vicinity which were owned by plaintiff.

On July 15th *Flynn* wrote a letter to the plaintiff informing the plaintiff that the contract in question had been assigned to him by *Bacon,* and said: "Let me know just what is due and I will remit whatever payment is due on same."  In reply to this letter the plaintiff, after calling attention to the conditions of the contract requiring the making of the improvements, in its letter of July 18th wrote as follows:

"This contract is null and void.  *Bacon* or you have failed to comply with the terms, therefore it is due for full and final settlement immediately, together with interest.  The

contract is canceled by the failure of you or *Bacon* to comply with terms of same.

"We do not know you in this matter, for *Bacon* has not given us any notice of assignment. We gave him until July 14th to comply with the terms of the agreement. He failed to do so; therefore our position is that we propose to foreclose this contract without further delay."

Plaintiff's managing officer testified that subsequent to that date, in the fall of 1921, the amount due on the contract was tendered, but that the tender was refused because the plaintiff held the contract should be forfeited.

This action was begun, the facts set out, and plaintiff made the following prayer for relief:

"Wherefore the plaintiff demands judgment canceling the contract and declaring it null and void; that the contract and any payment thereon be declared forfeited; that the defendants deliver possession of said premises to the plaintiff; that the plaintiff's title be established against any and all claims or interest of the defendants;" and for other relief.

The court found the facts substantially as stated and found that neither *Bacon* nor *Flynn* had performed the conditions of the contract, and judgment was entered adjudging the contract to be null and void and quieting the plaintiff's title as against the defendants *Bacon* and *Flynn* and for costs. From the judgment so entered the defendants appeal.

For the appellants there was a brief by *Classon & O'Kelliher* of Oconto, and oral argument by *V. J. O'Kelliher.*

For the respondent there was a brief by *Megan & Megan* of Oconto, and oral argument by *Giles Megan.*

Rosenberry, J. An opinion was filed in this case on March 6, 1923. After the time in which a motion for a rehearing might be made had expired, it was called to the attention of the court that the decision as written was misunderstood and had introduced some confusion into the law relating to the rights of vendor and purchaser under a land

contract.   The decision was withdrawn, the authorities reviewed, and the entire subject reconsidered, resulting, however, in no change in the mandate, nor, as we understand it, in the law as declared in the former opinion.

Upon the trial it was contended by the defendants that that clause of the contract relating to the making of the improvements was waived by the plaintiff company by reason of the fact that one Dunham, an agent of the Home Land Company, which last named company was the plaintiff's sales agent, had advised the defendant *Flynn* that the making of the improvements would not be insisted upon by the plaintiff.   The record is barren of any evidence showing that Dunham or the Home Land Company, whose agent he was, had any authority to waive any of the provisions of the contract.

The principal contention of the defendants is that upon the undisputed facts it appears that the plaintiff had elected to foreclose the contract and had thereby waived its right to declare the contract at an end.   This claim is based upon statements contained in the letters of July 7th and July 16th, the material parts of which are set out in the statement of facts.

Under *Shenners v. Pritchard,* 104 Wis. 287, 80 N. W. 458, and *Foster v. Lowe,* 131 Wis. 54, 110 N. W. 829, it cannot be doubted that upon the breach of the conditions of a land contract the vendor has three remedies: (a) he may elect to sue for the unpaid purchase money; (b) he may elect to sue for specific performance of the contract; and (c) he may elect to declare the contract at an end.   See, also, *Kunz v. Whitney,* 167 Wis. 446, 167 N. W. 747.

There can be no doubt that the election of one of these remedies waives the others.   The question in this case is, What constitutes a sufficient election?

In *Fox v. Wilkinson,* 133 Wis. 337, 113 N. W. 669, it is said:

"Since such choice is merely mental, any unambiguous act consistent with one and inconsistent with the other of

the elective positions will be deemed conclusive evidence of such election."

While this language was not used with reference to a land contract, it is applicable upon the general question of what constitutes an election of inconsistent remedies. See *Smeesters v. Schroeder,* 123 Wis. 116, 101 N. W. 363.

The letters of July 7th and July 16th can scarcely be said to be unambiguous. In the letter of July 7th the plaintiff says that it will cancel the contract, although by the same letter it extends the time of payment until July 14th. In the letter of July 16th it says: "This is to notify you that the said contract is canceled," although it is also said in that letter that if the quitclaim deed is not returned properly executed, "We will proceed to foreclose the contract and will take judgment against you for the full amount of claim including costs."

At all times after July 16th the plaintiff contended that the contract was at an end and did nothing inconsistent with that position. It refused to accept the tender of the remainder of the purchase price made by *Flynn* and held that the contract was void and no longer in force. The use of the word "foreclosure" and the threat to take judgment for the amount of the claim are inconsistent with the notice of cancellation. If so, it cannot be said to be unambiguous. The action of the plaintiff in refusing to accept the tender, its insistence that thereafter the contract was at an end, and the commencement of this action to quiet its title to the premises, are all consistent. We hold that it exercised the third right as defined in *Shenners v. Pritchard,* 104 Wis. 287, 80 N. W. 458.

It is further contended that equity will not give its aid in the enforcement of a forfeiture, and this leads us to the consideration of the respective rights of the vendor and purchaser under the ordinary form of land contract under the laws of this state. At common law the vendor had the right to maintain an action of ejectment against the purchaser

after condition broken, where the purchaser was let into possession under the contract. *Gillett v. Eaton,* 6 Wis. 30; 3 Wait, Actions and Defenses, 67; 107 Am. St. Rep. 724.

The action of ejectment was a legal remedy and was employed to enforce legal rights. In *Whittier v. Stege,* 61 Cal. 238, 241, the law is stated thus:

"When, therefore, the defendants, after they had obtained possession lawfully, substituted repudiation of the contract and refusal to comply with its terms, for performance or willingness to perform, they divested themselves by their wrongful act of the equitable estate which they acquired under the contract, and became trespassers or tenants at will, against whom their repudiated vendors could maintain ejectment. The vendors were remitted to their legal title, and in an action upon it the defendants could not invoke as a defense to it a contract of sale which they repudiated and refused to perform."

In some jurisdictions unlawful detainer is by statute made available for the vendor under similar circumstances. *Vos v. Dykema,* 26 Mich. 399; *Haskins v. Haskins,* 67 Ill. 446; *Ruth v. Smith,* 29 Colo. 154, 68 Pac. 278.

In *Wright v. Roberts,* 22 Wis. 161, it was held that, where the contract provides that the purchaser should "hold the premises from its date as tenant at sufferance of the vendor, subject to be removed as a tenant holding over in case of a default," etc., an action for use and occupation could be maintained against the purchaser, and it is stated inferentially in the course of the opinion that under a contract of that character an action of unlawful detainer would lie, citing ch. 33 of 2 Hilliard on Vendors.

In *Diggle v. Boulden,* 48 Wis. 477, 4 N. W. 678, an action was brought by the vendor for strict foreclosure of the land contract. The purchaser set up that the vendor had an adequate remedy at law in an effort to defeat the vendor's action, and it was held that an action of unlawful detainer was not adequate for the very good reason that, though the purchaser might be ousted of his possession, his

equities would not be foreclosed.   The case did not hold that under facts similar to those in *Wright v. Roberts,* 22 Wis. 161, an action of unlawful detainer would not lie.

However, in *Hill v. Sidie,* 116 Wis. 602, 93 N. W. 446, it was said that the two cases are in direct conflict in principle, and it was held that the case of *Diggle v. Boulden, supra,* was thenceforth to be followed, and that an action of unlawful detainer, where the relation of vendor and purchaser existed, was no longer available to the vendor where there was a breach of condition.

Such confusion as exists in respect to the law upon this subject is due mainly to a failure to distinguish between legal and equitable actions and defenses and a failure to read the language of the opinions in the various cases with reference to the facts which were before the court in those cases.   In the event of a breach of the conditions of a land contract the vendor has certain legal and equitable remedies. The purchaser has certain equitable rights, the nature and extent of those rights being dependent upon the particular facts and circumstances of each case.   If the vendor elects to sue for the unpaid purchase money, the rights of the purchaser are those that he would have under any contract and such as may arise by reason of the particular facts and circumstances of the case, as that a vendor is not able to convey a good title, that there are liens and incumbrances upon the premises, and other like defenses.   If the vendor elects to sue in equity for specific performance of the contract, the purchaser may defend upon any of the grounds appropriate to the circumstances in the particular case.   If the vendor elects to declare the contract at an end, he may then institute a proper action to recover possession where the purchaser has been let into possession under the terms of the contract, and to this action the purchaser may interpose such defenses as he has, both legal and equitable.   His legal relief will depend upon the terms of the contract.   His right to equitable relief will depend upon the particular

facts and circumstances of the case. In any event he must do more than assert a bare equitable right. He who seeks equity must do equity. He must show himself by the allegations of his pleading to be entitled under the established principles of equity jurisprudence to the relief prayed for. As was said in *Plato v. Roe,* 14 Wis. 453, 458:

"We do not think the plaintiff should be allowed to come into court merely to have his abstract right of redemption adjudged, without offering to exercise that right. It is true that if an ordinary mortgage had been given, the mortgagee could not have maintained ejectment. Still, if the mortgagor sees fit to execute the papers in such manner as to authorize the mortgagee to obtain possession at law, as was done here, we can see no reason why a court of equity should interfere in his behalf, except upon the usual terms of compelling him to do equity, and pay the amount really due on the mortgage, together with costs."

The defaulting party is entitled to relief in the event of a breach of the conditions under substantially the same circumstances that he would be entitled to like relief in other cases. It may be said generally that where a forfeiture is incurred by unavoidable accident, by fraud, by surprise, or by ignorance, not wilful, a court of equity will interpose and relieve the party in default from the forfeiture so caused, upon his making compensation if necessary or doing everything else within his power. 1 Pomeroy, Eq. Jur. § 451.

If the vendor has waived a breach or acquiesces in it, he may be precluded from enforcing the forfeiture. Under the well established practice in this state, if the vendor seeks to foreclose his contract the court will prescribe a certain limited time within which the purchaser may comply with its terms and take title to the property. Whether the vendor seeks legal or equitable relief, the purchaser may interpose such defenses, legal and equitable, as he may have, and his rights must thereupon be determined in accordance with established legal and equitable principles. He may not sit by and permit judgment to be taken in either a legal or

equitable action with the expectation that he will not be concluded thereby as in other cases. He must at the proper time assert his rights under the circumstances of the particular case in the manner prescribed by law. To hold that the purchaser has an absolute equitable right of redemption, which may not be lost otherwise than by a foreclosure, is to raise his equitable right to the status of a legal right. Parties should have some regard and respect for the terms of their own contracts and ought to make the terms thereof conform to their real understanding and not rely wholly or even largely upon a court of equity for protection from their own acts.

By an intentional, wilful refusal to perform his contract the purchaser may very well place himself without the field of equitable relief. He cannot at the same time have the benefit of the contract and of a rescission thereof. *McIndoe v. Morman,* 26 Wis. 588; *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920. This rule applies as well to the vendor. *Hart v. Stickney,* 41 Wis. 630.

In *First Nat. Bank v. Agnew,* 45 Wis. 131, 133, this court said:

"The cases in this court go no farther than to hold that a vendor may proceed to foreclose the right of the vendee to have a specific performance of his contract, on his failure to make the payments as agreed; and this court has established the rule that in such cases the only judgment the plaintiff can have is a judgment of strict foreclosure of the rights of the vendee, unaccompanied by any personal judgment for the unpaid purchase money."

The payments made by the purchaser are, unless he appears and shows grounds for equitable relief, where the contract so provides, forfeited to the vendor.

In *Raddatz v. Florence Inv. Co.* 147 Wis. 636, 648 (133 N. W. 1100), 1 Pomeroy, Eq. Jur. § 450, is quoted with approval, as follows:

"It is well settled that where the agreement secured is

simply one for the payment of money, a forfeiture either of land, chattels, securities, or money, incurred by its non-performance, will be set aside on behalf of the defaulting party, or relieved against in any other manner made necessary by the circumstances of the case, on payment of the debt, interest, and costs, if any have accrued, unless by his inequitable conduct he has debarred himself from the remedial right, or unless the remedy is prohibited, under the special circumstances of the case, by some other controlling doctrine of equity."

See, also, *Gates v. Parmly,* 93 Wis. 294, 66 N. W. 253, 67 N. W. 739.

This is not the rule in many jurisdictions. For an instructive discussion of the whole matter see 5 Minnesota Law Review, 466 *et seq.;* also 53 Canada Law Jour. 82.

In an action by the purchaser to redeem and compel conveyance by the vendor, it was held that a delay of six years was unreasonable and would defeat an action for specific performance brought by the purchaser. *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532.

The period of redemption to be allowed in the event of a strict foreclosure by the vendor is largely within the discretion of the trial court. *Dickson v. Loehr,* 126 Wis. 641, 106 N. W. 793.

If the vendor asserts his legal rights under the contract, they will, as before indicated, be enforced unless the purchaser shall assert his right to equitable relief under the law of this state. The purchaser is relieved against a forfeiture declared by the vendor only upon condition that he perform the terms of his contract, assuming that he has not by his conduct debarred himself from this relief as by wilful and intentional refusal to perform. See *Hall v. Delaplaine,* 5 Wis. 206; *Button v. Schroyer,* 5 Wis. 598.

Applying the law to the facts in this case, it appears that upon the breach of conditions by the purchaser the vendor declared the contract at an end. The defendant has never by his pleading or proof brought himself within the field of equitable relief in that he has never offered to perform

the conditions of the contract. The agreement to clear the land and build the house being a substantial part of the consideration and the defendant having never offered to perform the contract in this respect, he was not entitled to equitable relief. So that under the facts in this case the defendants had at the time of the commencement of this action no right or interest in the premises, either legal or equitable. If, when the forfeiture was declared, the defendants had promptly offered to perform fully the contract, a different situation would have been presented. Equity has not enforced a forfeiture. It has failed to relieve against a forfeiture because no equitable grounds of relief from the forfeiture exist.

The contract outstanding constituted a cloud upon the title, and to remove this plaintiff was clearly entitled to the aid of a court of equity on well established principles.

*By the Court.*—Judgment affirmed.

NOTE.—In addition to the cases cited in the foregoing opinion, the following Wisconsin cases deal with the subject of vendor and purchaser: *Bull v. Shepard,* 7 Wis. 449; *Bateman v. Johnson,* 10 Wis. 1; *Mowry v. Wood,* 12 Wis. 413; *Vilas v. Dickinson,* 13 Wis. 488; *Baker v. Beach,* 15 Wis. 99; *Beckwith v. Philleo,* 15 Wis. 223; *Jarvis v. Dutcher,* 16 Wis. 307; *Northwestern Iron Co. v. Meade,* 21 Wis. 474; *Seatoff v. Anderson,* 28 Wis. 212; *Winslow v. Crowell,* 32 Wis. 639; *Kimball v. Darling,* 32 Wis. 675; *Landon v. Burke,* 36 Wis. 378; *Church v. Smith,* 39 Wis. 492; *Northrup v. Trask,* 39 Wis. 515; *Buswell v. Peterson,* 41 Wis. 82; *Martin v. Scofield,* 41 Wis. 167; *Williams v. Williams,* 50 Wis. 311, 6 N. W. 814; *Benson v. Cutler,* 53 Wis. 107, 10 N. W. 82; *Hoile v. Bailey,* 58 Wis. 434, 17 N. W. 322; *Ewald v. Northwestern Mut. L. Ins. Co.* 60 Wis. 431, 19 N. W. 513; *Johannes v. Standard Fire Office,* 70 Wis. 196, 35 N. W. 298; *Superior Consolidated L. Co. v. Nichols,* 81 Wis. 656, 51 N. W. 878; *Nelson v. Jacobs,* 99 Wis. 547, 75 N. W. 406; *Phillips v. Carver,* 99 Wis. 561, 75 N. W. 432; *Krakow v. Wille,* 125 Wis. 284, 103 N. W. 1121; *Kipp v. Laun,* 146 Wis. 591, 131 N. W. 418; *James v. Knox,* 155 Wis. 118, 143 N. W. 1071; *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73; *Heins v. Thompson & Flieth L. Co.* 165 Wis. 563, 163 N. W. 173; *In re Catfish River D. Dist.* 176 Wis. 607, 187 N. W. 673.