Argued September 8, affirmed November 29, 1977

LANCASTER et ux, *Appellants,*
*v.*
CARELLI et al, *Respondents.*
(No. 75-565 E, SC 24751)
571 P2d 899

■■■■■■■■

Thomas M. Mosgrove, John Day, argued the cause and filed briefs for appellants.

Benhardt E. Schmidt, Portland, argued the cause and filed a brief for respondents Bill Frost and John Omta.

Alan M. Lee, of Smith & Lee, Klamath Falls, argued the cause and filed a brief for respondents Carelli.

■■■■■■

HOWELL, J.

## HOWELL, J.

This is an action for the restitution of $8,053.38 paid on a mortgage by the plaintiffs. The defendants alleged the defense of res judicata and, after a trial without a jury, the trial court entered judgment for the defendants. The plaintiffs appeal.

The facts are complex but generally undisputed. The plaintiffs, Mr. and Mrs. Lancaster, owned two parcels of land—the Jackson place, which consisted of over 900 acres, and the Smith place, which contained about 600 acres. The Lancasters sold these two parcels together to Mr. and Mrs. Carelli, two of the four defendants. The sale price was $330,000, with a down payment of $105,000 and the balance of $225,000 to be paid in annual installments. The property was sold on a conditional land sale contract with title to remain in the Lancasters until the final installment payment was made. The contract was signed on February 6, 1973.

Defendants Carelli paid the $105,000 down payment in two parts. First, they transferred to the Lancasters another piece of property valued at $50,000. Second, title to the 600-acre Smith place was transferred to the Carellis, whereupon they mortgaged it for $80,000 to the Connecticut Mutual Life Insurance Company and then transferred title back to the Lancasters, subject to the mortgage. The Carellis then paid the Lancasters $55,000 in cash out of the $80,000 from the mortgage in order to complete the total amount of the down payment of $105,000.

The Carellis had possession of the land from February, 1973, until April 25, 1974. On that date they assigned all of the interest in both the Jackson place and the mortgaged Smith place for $50,000 to defendants Bill Frost and John Omta. The Carellis also "assigned" their obligation on the mortgage. Frost and Omta evidently failed to make the annual payment on the land sale contract due in November, 1974, and plaintiffs filed a foreclosure suit in early 1975.

The Carellis did not enter an appearance in the foreclosure suit, and the plaintiffs Lancaster and defendants Frost and Omta entered into a stipulated interlocutory decree of foreclosure which provided that plaintiffs were granted a judgment against the Carellis, Frost and Omta for $225,000, the balance due on the contract; $7,533.58 representing a prior payment made in April, 1974, by plaintiffs on the mortgage; $5,000 attorney fees; and $2,087.[1] The interlocutory decree also provided that if defendants failed to pay $50,000 on or before April 2, 1975, and the balance due on the contract on or before September 3, 1975, the contract would be foreclosed but that the foreclosure would not affect the judgment for the $7,533.58 mortgage payment nor the judgment for $5,000 attorney fees.[2]

The interlocutory decree stated:

"* * * * *.

"7. It is further decreed that in the event a final decree of foreclosure is entered herein as set forth in paragraph five (5) above, that the same shall be in satisfaction of the judgments granted hereby except that the following portions shall not be satisfied thereby and shall remain judgments against said defendants Carelli, Bill Frost and John Omta, to-wit:

"(1) $7,533.58, together with interest thereon at 6% per annum from May 3, 1974, until paid.

"(2) $5,000 for plaintiffs' reasonable attorney fees.

"(3) Plaintiffs' costs and disbursements in the sum of $_____.

"8. In the event the judgments herein are not paid in full prior to August 1, 1975, the defendants Bill Frost and John Omta shall pay all real property taxes due on the property described herein by August 1, 1975.

"9. *The defendants Bill Frost and John Omta shall make the payment now due to Connecticut Mutual Life*

[1]The record does not show the reason that the plaintiffs were awarded the $2,087.

[2]There is no issue between the parties as to the validity of the judgments for the prior mortgage payment and the attorney fees.

*Insurance Co. on the mortgage recorded in Book A-15, Page 227 et seq. within 30 days from March 3, 1975, or within 45 days of said date if such extension is agreed to by the mortgagee.*

*"* * * * *."* (Emphasis supplied.)

Defendants failed to pay any part of the $50,000 on April 2, 1975, and the court entered a final decree of foreclosure on April 7, 1975. The final decree was in the usual form and foreclosed all interest of defendants in the property. In the final decree, no mention was made of Paragraph 9 of the interlocutory decree relating to the mortgage payment by Frost and Omta or of any effect to be given to defendants' failure to make such payment. Frost and Omta failed to make the payment; plaintiffs did so, and subsequently filed this action to recover the payment.

Plaintiffs contend that they are entitled to restitution of the $8,053.38 that they paid on the mortgage in 1975 on the theory the payment was the obligation of defendants Carelli and of Frost and Omta, and that they paid it to protect their interest.

■ Whether the payment was the obligation of the Carellis and of Frost and Omta depends on the proper construction of the decrees in the foreclosure suit. That suit settled the rights of all these parties respecting the land, at least among themselves. We will not construe the final decree as preserving the obligation set out in Paragraph 9 of the interlocutory decree without some affirmative indication that that result was intended by the parties and approved by the court. As a general rule, when a vendor chooses to bring a suit for strict foreclosure of the conditional sales contract, he foregoes other remedies potentially available to him. The decree of strict foreclosure will foreclose the buyer's interest in the property and the vendor is not entitled to both foreclosure and recovery of the unpaid installment. We have held that a decree of strict foreclosure is an alternative to a money judgment on the land sale contract, and that if the

vendor chooses foreclosure as a remedy, he must be satisfied with the property he receives:

> "The plaintiff, however, is not entitled to a decree of strict foreclosure and in addition a judgment for the amount due on the contract: *Marquardt v. Fisher*, 135 Or. 256, 295 P. 499, 77 A.L.R. 265. In obtaining strict foreclosure, 'the only judgment the plaintiff can have is a judgment of strict foreclosure of the rights of the vendee, unaccompanied by any personal judgment for the unpaid purchase money': *First National Bank v. Agnew*, 45 Wis. 131. To the same effect, see *Oconto Co. v. Bacon*, 181 Wis. 538, 195 N.W. 412, 40 A.L.R. 175." *Grider v. Turnbow*, 162 Or 622, 646, 94 P2d 285 (1939).

■ By the terms of the stipulated interlocutory decree, plaintiffs and Frost and Omta agreed to certain exceptions to the general rule in this case. The plaintiffs are, however, barred by the doctrine of res judicata from relitigating the matters covered by the stipulated decree. Their rights in this case depend on the effect of the decree of foreclosure.

■ It is generally held that a judgment or decree based upon an agreement of the parties by which the matter in controversy is adjusted or settled operates as a bar to a subsequent suit or action on the same issue. Annot., 2 ALR2d 567 (1948). Whether the second action is barred depends upon the intent of the parties in the execution of the stipulated interlocutory decree with particular emphasis upon the terms of the agreement. Annot., *supra* at 544; 47 Am Jur 2d 147, Judgments § 1091 (1969). It is a fair inference that the parties intended to dispose of all issues raised in the foreclosure suit except those specifically retained. Annot., supra at 545. Here, the parties specifically provided in the interlocutory decree for the survival of the obligations for attorney fees and the prior mortgage payment, but made no mention of the effect of defendants' failure to pay the mortgage payment "now due" Connecticut Mutual. Thus, if plaintiffs are to prevail, they must establish that the $8,053.38 mortgage payment due under Paragraph 9 of the interlocutory decree was intended to survive the final

decree even though it was not mentioned in the final decree.[3]

Plaintiffs argue that Paragraph 9 was intended to survive the final decree and point to its position in the interlocutory decree. Plaintiffs state that because Paragraph 9 followed Paragraph 7, which specifically provided that the $7,533.38 previously paid by plaintiffs plus the $5,000 attorney fees were to continue as judgments, the same intention should apply to the obligation contained in Paragraph 9. We believe that the opposite is true. Paragraph 7 specifically states that regardless of the final decree of foreclosure plaintiffs were entitled to judgments for those two amounts. If it were intended that the Paragraph 9 obligation survive, we believe the parties would have used the same language as they did for Paragraph 7. No mention of a survival judgment was stated for Paragraph 9 and no mention of it was made in the final decree.

Plaintiffs argue that the final decree did not mention the Paragraph 9 obligation because plaintiffs had not paid it at that time. Accepting that, the fact remains that it was a debt that was due at the time of the entry of the final decree, and the decree could have provided that plaintiffs have a judgment for that amount.

Affirmed.

---

[3]No evidence was offered at the trial by either plaintiffs or defendants as to their intent. Both parties took the position the stipulated interlocutory decree and the final decree were unambiguous and therefore evidence of the intent of the parties was unnecessary and inadmissible.