Argued at Pendleton May 2; reargued at Salem September 5;
reversed October 3, 1939

# GRIDER *v.* TURNBOW

(94 P. (2d) 285)

In Banc.

*J. S. Hodgin,* of La Grande, for appellant.

*Carl G. Helm* and *Henry L. Hess,* both of La Grande, for respondent.

BAILEY, J. On August 16, 1937, the plaintiff, W. T. Grider, contracted to sell, and the defendant, Hazel M. Turnbow, to purchase, certain designated lots and a dwelling house thereon in the city of La Grande. The price stipulated to be paid therefor was $2,300, of which Mrs. Turnbow paid $300 in cash upon the execution of the contract. The balance was to be paid in monthly installments until $1,500 had been paid on the principal, at which time the balance of the purchase price, to-wit, $800, would be payable. Monthly installments were to be $27.50 each, to include interest on the unpaid principal at the rate of 5 per cent per annum, and were to be paid on the sixteenth of each month, beginning September 16, 1937. The vendee further agreed to pay the taxes on the premises and to keep the buildings thereon insured.

The contract provided that time should be of the essence thereof and that in case of default by the vendee in the payment of any of the installments within the time specified in the contract, or of breach by her of any of the covenants contained in the contract, the vendor at his option might declare the "contract broken, null and void, and in such case all the rights created or then existing in favor of the second party [vendee] as against the first party [vendor] shall utterly cease and determine and the right of possession of the premises and all other rights acquired by the second party hereunder shall revert and revest in the said first party without any act of re-entry, or without any acts of the first party to perform, reclamation or compensation for money paid or received on account of the proposed purchase of said property, and in case of said default all money paid hereunder shall remain and be retained by the first party or his assigns as the

agreed reasonable rental of the premises up to the time of such default and for the liquidated damages for the nonfulfillment of this contract.''

About three weeks after the execution of the contract the defendant went into possession of the property and at once began to make repairs upon the house, by papering, calcimining, painting and enameling the interior of the building and painting the exterior, the reasonable value of which repairs was estimated to be $193.

Monthly installments of $27.50 were paid by the defendant to the plaintiff for four consecutive months beginning September, 1938, all on the twentieth of the month except one made on October sixteenth. No other or further payments were made on the principal after the December payment, and there remained thereafter as balance unpaid on the principal the sum of $1,923.70.

On January 18, March 23, April 23, May 20 and June 27, 1938, the defendant made payment of varying amounts to be applied on interest due, totaling $49.07 and covering all interest due until June 20 of that year. On March 15, 1938, upon the failure of the vendee to pay any part of the 1938 taxes, the vendor paid the first quarterly installment thereof, amounting to $17.41.

The plaintiff, an elderly man, entrusted to B. A. Benham, who was engaged in real estate and insurance business at La Grande, the collection of the payments due under his contract with Mrs. Turnbow. Mr. Benham on behalf of the plaintiff wrote to Mrs. Turnbow on March 5, 1938, calling attention to the fact that the only payment made by her on the January, 1938, installment was that of interest and that there remained due on the January installment $19.95 to be applied on the principal sum named in the contract; that none

of the monthly installment for February had been paid; that the March installment was payable on March 16; and that in addition to those amounts there was due the sum of $97 for repairing the house, for which a mechanic's lien had been filed by the contractor. He also stated in the letter that Mr. Grider had, some time previously, told the defendant's husband that he, Mr. Grider, did not think that Mrs. Turnbow was "doing the right thing to put so much into repairs, that he felt you should" first have paid that amount to be applied on the principal. The letter ended by stating that the amounts which were due on the purchase price, together with the March installment and the $97 to cover the lien, "will have to be paid on or before March 16, 1938, or Mr. Grider says he will declare the contract broken and the amount you have paid will be retained by him and you will have to vacate the property by March 16, 1938, unless the above amount is paid."

Mr. Benham as the agent of the plaintiff on July 29, 1938, which was Friday, wrote to Mrs. Turnbow, asking why her husband had not come down to see him on Sunday as he had promised. "You know," he wrote, "that I can not keep Mr. Grider in 'good spirits' much longer. You know that you haven't paid even the interest for July. It was understood that Mr. Grider would let you pay just the interest for two months. After that you would have to pay your regular payments. With the payment for the month of June, on which you just paid the interest, you owe $19.13—for the month of July you owe your full payments, interest and principal $27.50—these two added together makes a total of $46.43, which if not paid by

August 5th, 1938, Mr. Grider will start proceedings against you."

This suit was instituted August 11, 1938. The amended complaint, on which issue was joined, was filed August 27 of that year. In it the plaintiff, after alleging the execution of the contract by the plaintiff and the defendant and the legal effect of that instrument, a copy of which is attached as an exhibit and made a part of the amended complaint, sets forth that the plaintiff "has performed all the terms, agreements and stipulations on his part to be performed, as required in said contract, and is ready, able and willing to complete all the requirements in said contract required of him, and as therein agreed."

The amended complaint then states that upon execution of the contract the defendant and her family entered into possession of the premises and ever since that time have continued to occupy the same; that the reasonable rental value of the premises described in the contract is and since the date of execution thereof has been $27.50 a month; that the defendant paid certain monthly installments on the contract and in addition thereto certain sums of interest; that "there is now due and owing from the defendant to plaintiff the sum of $180.97"; that the defendant has neglected and refused to pay the taxes for the year 1938, amounting to $69.64; that such failures and omissions on the part of the defendant were "all in violation of the agreements and stipulations of said contract, and the especial agreement that time is the essence of said contract, and she and her family continue to reside upon and· occupy the said premises, and has breached the said contract, but refuses to surrender the same or allow plaintiff the right of re-entrance thereon; and

that by and under the terms of said contract, the payments made thereon, up to and inclusive of that made on the 20th day of December, 1937, were forfeited and considered as payments of rental and stipulated damages.''

In the prayer the plaintiff asks ''that the said contract be strictly foreclosed according to the terms thereof'', and that the defendant and all persons claiming under her be forever barred of any right, title, interest or claim in or to the premises. The prayer also asks that the plaintiff recover from the defendant the sum of $180.97 and the further sum of $27.50 a month for each and every month that the defendant occupies the premises after August 16, 1938.

The answer admits the execution of the contract and the payments made thereon as alleged in the amended complaint. As an affirmative defense the defendant alleges that after December, 1937, she was unable to meet the payments regularly as they became due; that the plaintiff waived the making of such payments according to the strict terms and conditions of the contract; that it was agreed by and between the defendant and the plaintiff that ''she should make the monthly payments regularly and that she should make payments on principal as she was able to make the same''; that no monthly payments of principal were made by defendant after the month of December, 1937, but that payments of interest were made by her up to and including the month of June, 1938; and that the same were accepted by the plaintiff without objection as to the date of payment.

It is then alleged that the defendant made certain repairs of the exterior and interior of the building, of the reasonable value of $193, and that no part thereof

had been paid by the plaintiff to the defendant. The defendant avers that the plaintiff "waived the forfeiture and liquidated damage clause of said contract" by repeatedly accepting payments past due; that the plaintiff had not given the defendant any notice of his intention in the future to insist upon strict performance of the contract by her; and that the plaintiff by his waiver of the time-essence clause of the contract, his failure to give notice to defendant of his intention in the future to require strict performance of the contract, his institution of this suit, "and the election on the part of the plaintiff in effect declaring said contract null and void and of no effect, the said defendant, Hazel M. Turnbow, claims a mutual rescission thereof and rescinds said contract and offers to, and has heretofore offered to surrender said premises to plaintiff, plaintiff having breached this contract, among other things, by bringing this suit without due or any notice to defendant . . . of his intention to rehabilitate time as the essence of the contract, in utter disregard of the terms of said contract".

The defendant asked that she be awarded recovery against the plaintiff of the amount she had paid on the contract, together with the reasonable value of improvements made by her, with interest at the rate of 5 per cent per annum from the date of such payments, less the reasonable rental value of the premises during her occupancy thereof, alleged by her to be $15 a month.

The affirmative allegations set forth in the answer were put in issue by the reply, and after trial a decree was entered in favor of the defendant and against the plaintiff for recovery of $404.55, which amount was

made a lien on the property described in the amended complaint. From this decree the plaintiff has appealed.

■ There is no controversy as to the amounts or dates of payments made on the contract by the defendant. There is, however, some dispute as to the conditions under which the payments were made. Some time after the last installment was paid on the principal, that of December, 1937, the defendant's husband told the plaintiff that the defendant was unable to make the payments as required by the contract, and asked or suggested that she be permitted to sell her interest in the property, to which the plaintiff consented, provided that the new purchaser be some one responsible and satisfactory to him. Nothing further was said about a sale by the defendant.

Prior to the writing of the March 5 letter by plaintiff's agent to the defendant a lien was filed against the property by the contractor who had made repairs on the house. The defendant's husband, according to his testimony, went to Mr. Benham, plaintiff's agent, and told him of the financial condition in which he and his wife found themselves. He further testified that Mr. Benham told him that if he would satisfy the lien, the defendant might pay on the contract as she was able, and that all the plaintiff wanted was that the interest be paid, in order to keep the contract alive. The defendant's husband also testified that no request was ever made for payment of the principal.

This testimony of Mr. Turnbow is not in accord with that given by his wife. Mrs. Turnbow on direct examination testified as follows:

"Q. Did Mr. Benham ever demand of you these payments in full, other than the interest, after the receipt of that letter of March sixth, Exhibit B,—under the

contract? * * * A. He didn't exactly demand it, but asked me if I would be able to take it up at different times.

"Q. (Mr. Hodgin) How is that? A. The payments— he didn't exactly demand them, but he asked me when I could straighten—take care of it—take care of the payments."

It is admitted by the plaintiff that he did waive payment of the principal for the months of January and February, 1938, but he insists that although he accepted payment of interest only up to June 20 of that year he was at all times after February, 1938, demanding payment of the entire monthly installments as they became due. We believe that the record as a whole bears out the plaintiff's version of the dealings between himself and the defendant in this respect. Mr. Benham's letter of March 5 to the defendant was written after Mr. Turnbow claimed he had the conversations with Mr. Benham and the plaintiff, and it does not seem reasonable to suppose that Mr. Benham would have written that letter if Mr. Grider had told the defendant's husband that payments might be made as convenient to the defendant, or that Mr. Benham would have stated that the plaintiff would be satisfied with the payment of interest alone. Moreover, we have the letter of July 29 from Mr. Benham to the defendant, calling upon her to make certain payments on the principal and interest which were past due.

Both the defendant and her husband testified that they had each called on Mr. Benham during the latter part of July or early in August, 1938, and had stated to him that the defendant would pay the interest for the month of July and both principal and interest for the month of August on or before August 10. Although

this testimony was controverted. by Mr. Benham, it tends to disprove the statements made by both Mr. and Mrs. Turnbow that the plaintiff at all times indicated that he would be satisfied with the payment of interest alone and was not demanding payment of the principal.

The defendant asserts that by the institution of this suit the plaintiff breached his contract with her, thereby permitting her to treat the contract as at an end and to recover from the plaintiff the amounts which she asks in her affirmative answer to the amended complaint. As evidence of defendant's treating the contract as mutually rescinded by the parties thereto, she calls attention to her letter written to the plaintiff on September 8, 1938, in which she refers to the suit filed by the plaintiff as having been instituted for the purpose of declaring the contract between the parties thereto null and void, and in which she stated that she "hereby notifies you that she claims a mutual rescission of the same and hereby offers to render possession to you of the said premises. This rescission is claimed by reason of the illegal declaring of a forfeiture in the bringing of the said suit."

Counsel for the defendant argue that the allegations contained in the original complaint amounted to a declaration on the part of the plaintiff that he thereby renounced the contract and that it was no longer of any binding force or effect. The original complaint, after setting forth the failure of the defendant to pay the monthly installments and the taxes on the property for 1938, her continuing to occupy the premises and her failure to surrender the same to the plaintiff, which acts are designated as being "all contrary and in violation of her covenants and stipulations in said

contract", further avers: "and [defendant] thereby has breached said contract, and plaintiff has, and does by these presents declare that the said contract is at an end, and that the payments made thereon are rentals and stipulated damages as in said contract agreed, and that the said unpaid installments are due this plaintiff." It is upon this latter clause that counsel for defendant base their claim of repudiation of the contract by the plaintiff.

However, the amended complaint was served and filed August 27, some 11 or 12 days prior to the writing of defendant's above-mentioned letter to the plaintiff, and therefore the defendant's attempted election to claim a rescission is ineffectual as far as it is based solely on the language of the original complaint. Even though the allegations of that initial pleading be treated as a repudiation of the contract on plaintiff's part, nevertheless the plaintiff had a right to recede from that position prior to defendant's making any claim of a rescission or cancellation of the contract based on plaintiff's action. A rescission may be accomplished either by agreement of the parties or brought about by operation of law: *Hawkins v. Rodgers*, 91 Or. 483, 506, 179 P. 563, 905. The institution of the present suit did not of itself amount to a rescission of the contract, whether the suit be regarded as one for strict foreclosure or for rescission, for the reason that it alone could not bar the defendant of any rights which she might have in and to the enforcement of the contract.

In 1 Black on Rescission and Cancellation, 2d Ed., § 6, we find the following statement: "Where one of the parties to a contract unjustifiably abandons it or repudiates it, and refuses to proceed with it, this does not constitute a rescission of the contract."

■ The defendant maintains that she elected to treat the contract as rescinded and advised the plaintiff of such election by her letter of September 8. Prior, however, to the writing of that letter the original complaint had been superseded by the amended complaint. In order to accomplish the rescission of a contract by mutual agreement of the parties to it, "the minds of the parties must meet on an identical proposition which they both understand alike and to which they both assent in the same sense; otherwise, there is no agreement": *Hawkins v. Rodgers,* 91 Or. 483, at 494. See also *Norfolk Hosiery & Underwear Mills Co. v. Aetna Hosiery Co.,* 124 Va. 221, 98 S. E. 43.

■ The original complaint, in addition to the above-quoted excerpt and a prayer similar to that of the amended complaint, contained an allegation that the plaintiff "has carried out in full all things required of him in said contract, and is ready, able and willing to complete the same as stipulated and give deed to defendant for said lots on her completion of her part in said contract."

What is hereafter said concerning the amended complaint applies with equal force to the original pleading. The amended complaint, although not a model pleading, should be construed as the statement of a cause of suit for strict foreclosure of the contract between the plaintiff and the defendants. It is neither a demand for specific performance nor for the rescission or cancellation of the contract. The relief sought is in effect a decree barring and foreclosing the equitable interest of the defendant in the contract in question: *Security Savings & Trust Co. v. Mackenzie,* 33 Or. 209, 211, 52 P. 1046. The plaintiff, by instituting this suit, recognizes the agreement as still in force. Both in the original

and the amended complaint he alleges that he is ready, able and willing to perform. In the prayer of both complaints he asks for a decree "to get rid of the equity" of the defendant by barring her forever from any interest in the property. He thereby admits that she has an equity in the premises: *Flanagan Estate v. Great Central Land Co.*, 45 Or. 335, 342, 77 P. 485.

■■ The right of the plaintiff to declare a forfeiture was waived by the institution of this suit, which must be regarded as an election on his part to treat the agreement between the parties as a subsisting contract: *Missouri Pacific Railway Company v. Frost*, 146 Ark. 472, 225 S. W. 645; *Bassham v. Evans*, Tex. Civ. App., 216 S. W. 446; *Walls v. Cruse*, Tex Com. App., 235 S. W. 199; *Foster v. Lowe*, 131 Wis. 54, 110 N. W. 829.

In the statement of facts in *Flanagan Estate v. Great Central Land Co.*, supra, it appears that the plaintiff, the vendor, before instituting suit "declared the contract forfeited" and demanded a return of the deed, then held in escrow, with which demand compliance was had. In passing upon the right of the plaintiff to maintain the suit, this court said:

"The next objection pertains to the relief sought, it being insisted that the court ought not to decree a strict foreclosure under the conditions prevailing. A forfeiture is not insisted upon here, and, if it were, equity would not enforce it. While it might refuse in many instances to interfere for the relief of an obligor against forfeiture for breach of an obligation, it will never interpose to declare a forfeiture, that being a matter, if insisted upon, entirely for the law side of the court. The plaintiff, by the act of instituting a suit for a strict foreclosure, recognizes the agreement as still in force and presently subsisting, for its purpose is to get rid of the equity of the land company by obtaining a decree barring it forever. The plaintiff thereby ad-

mits that the land company has an equity in the premises which plaintiff's predecessors by the terms of the contract agreed to convey, but submits that the company should be foreclosed thereof by reason of not having fulfilled the stipulations therein contained upon its part."

In construing both the original and amended complaints in the case at bar it is necessary to view each pleading as a whole, and not to isolate any single allegation as determinative of the nature of the suit. When thus construed, both complaints manifest that the plaintiff has, by the allegation that he is ready, able and willing to perform and the other allegations to which attention has been directed, and by his request for a foreclosure of the defendant's equity in the premises, elected to treat the contract as still in force and effect.

The defendant, however, argues that a pleading is to be construed against the pleader. This rule of law is applied in determining whether a pleading constitutes a cause of action, suit or defense. It does not mean that the nature of the cause stated may be so interpreted as best to serve the convenience of the opposing party.

As we have concluded that the complaint herein states a cause of suit for strict foreclosure of the contract, we shall now consider whether the facts in the case before us show such a breach of the contract by plaintiff's institution of the suit as to permit the defendant to predicate thereon an election to treat the contract as rescinded.

More or less confusion has arisen as to the distinction between the right of a vendor to declare a forfeiture and his alternative right to institute a suit for strict foreclosure of the contract between himself and

his vendee. It therefore appears advisable at this time to discuss briefly the conditions under which a vendor may, without thereby breaching the terms of the contract, declare a forfeiture.

The agreement between the parties to this suit is that time is of the essence of their contract and that upon the failure of the vendee to comply strictly with the terms of the agreement the vendor may declare a forfeiture of the amounts paid thereon by the vendee. Such a contract does not by its own terms automatically work a forfeiture upon condition broken, but merely gives to the vendor a right to elect to declare a forfeiture. Even though the vendor may not have waived strict performance by the vendee of stipulations of the contract, nevertheless, since the forfeiture provision is not self-executing, he is not entitled to declare a forfeiture except upon reasonable notice to the vendee of his intention so to do. It was said by this court in *Epplett v. Empire Investment Co.*, 99 Or. 533, 541, 194 P. 461, 700:

"Since contracts like the one here are not self-executing, the law by implication introduces into such contracts a provision that the right of forfeiture should be exercised only after first giving notice for a reasonable period of time, or rather, speaking figuratively, the invisible and omnipresent hand of the law writes such a provision into the contract; and, therefore, the right to forfeiture can not be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice."

See also: *Higinbotham v. Frock*, 48 Or. 129, 83 P. 536, 120 Am. St. Rep. 796; *Holland v. Bradley*, 140 Or. 258, 265, 12 P. (2d) 1100; *Kemmerer v. Title & Trust Co.*, 90 Or. 137, 144, 175 P. 865.

The clause in the contract providing that time shall be of the essence thereof is for the benefit of the vendor, and it may be waived by him. The waiver may be effected by the acceptance of payments past due without insisting upon punctuality. When once waived, the provision for forfeiture is of no avail to the vendor unless he first gives to the purchaser reasonable notice of his intention in the future to insist upon strict performance on his part of the terms of the contract. This rule of law is so well established that no citation of authority is necessary to support it.

The courts have placed so much emphasis on the necessity of rehabilitating the time-essence clause, when once waived, before a forfeiture may be declared, that the impression is created that a vendor, before declaring a forfeiture, need not give the vendee notice of his intention so to do unless there has been a waiver. Such is not the case. However, there is this distinction: The period of time that would be deemed reasonable notice to the vendee after waiver of the time-essence clause would of necessity be greater than if there had been no such waiver.

By the contract of sale the vendee is considered the equitable owner of the land and the vendor retains a lien thereon for the purchase price. This lien is commonly spoken of as a vendor's lien, but may more properly be termed a vendor's right to enforce his claim for the purchase money out of the vendee's equitable estate. The enforcement of this vendor's claim entails equitable remedies: *Flanagan Estate v. Great Central Land Co.*, supra; *Security Savings & Trust Co. v. Mackenzie*, supra. Equity may either grant strict foreclosure of the contract or it may decree a foreclosure by sale of the land in the orinary way, dependent upon the

exigencies and equities of the case: *Flanagan Estate v. Great Central Land Co.*, supra. The plaintiff, at all times ready, able and willing to perform his contract, is entitled to invoke the aid of a court of equity to obtain relief from the failure of the defendant to perform her contract: *Turnbow v. Keller,* 142 Or. 200, 12 P. (2d) 558, 19 P. (2d) 1089.

In *Atkochunas v. Gustafson*, 156 Or. 126, 130, 66 P. (2d) 1192, this court observed:

"It is well settled in this state that a vendor is entitled to the relief of strict foreclosure where the vendee fails to comply with the terms of his contract in the payment of the purchase price. It was so held in the following cases [citing numerous authorities.] In none of these decisions did the court hold that the bringing of such suit constituted a rescission of the contract or was a disaffirmance of it. Nor was it held in any of said cases that the defendant in the suit could treat the bringing of the suit as a wrongful rescission of the contract and become entitled to recover back what he had paid under the contract, as the defendants now seek to have done in the instant case."

The first part of the foregoing excerpt is quoted with approval in *McCracken v. Walnut Park Garage, Inc.*, 156 Or. 697, 703, 68 P. (2d) 123, in which the opinion further states:

"The bringing of the present suit was not a rescission of the contract, but the enforcement thereof. The bringing of a suit for strict foreclosure of a contract of sale of real estate is not a disaffirmance of the contract, but an affirmance of the contract which the parties are seeking to enforce. This is not a suit to cancel or rescind the contract where the relief, if granted, would have the effect of terminating the contract, but is a suit brought to enforce a contract right which can

only exist if the contract is still in force: 3 Black on Rescission [& Cancellation], 2d Ed., § 576.''

There is this apparent distinction between the effect of the vendor's declaring a forfeiture and his institution of a suit for strict foreclosure: In the former instance he treats the contract as at an end and the vendee as no longer having any interest in the property, while by availing himself of the latter remedy he recognizes the vendee's interest as continuing until foreclosed by the decree in his suit. If the vendor prematurely declares a forfeiture, that is, before he has given the vendee reasonable notice of his intention so to do, the vendee may treat such act of the vendor as a repudiation of the contract, and may then give notice that he elects to treat the contract as rescinded: *Epplett v. Empire Investment Co.*, supra. On the other hand, in a suit for strict foreclosure the vendor holds himself at all times ready, able and willing to abide by the terms of the contract. If a suit for strict foreclosure is prematurely instituted, the defendant therein has a right to stay the proceeding by a proper plea in abatement: *Hawkins v. Rodgers*, supra. But the premature bringing of a suit for strict foreclosure does not amount to a repudiation of the contract enabling the vendee to effect a mutual rescission by declaring his election to treat the contract as canceled by the vendor.

The defendant, in support of her contention that the bringing of this suit amounts to a repudiation of the contract by the plaintiff and forms the basis of a mutual rescission, relies upon *Olson v. Pixler*, 138 Or. 250, 6 P. (2d) 23, and *Johnson v. Feskens*, 146 Or. 657, 31 P. (2d) 667, 107 A. L. R. 340. The latter of these cases was considered by this court as a suit to rescind

a contract, and not one for strict foreclosure. The case of *Olson v. Pixler*, supra, is discussed and explained in *Atkochunas v. Gustafson*, supra, wherein it is stated that the case was tried both in the circuit court and upon appeal as a suit for rescission. It might appear, from a reading of the opinion in that case, that this court had there looked upon the mere bringing of a suit for strict foreclosure, without rehabilitation of the time-essence clause after it had been waived, as a disaffirmance of the contract, authorizing the vendee to treat the contract as rescinded and have restoration accordingly. In so far as *Olson v. Pixler*, supra, so holds or may be construed to hold, it is hereby expressly overruled.

From the statement of facts in the case before us it appears that on July 29, 1938, the plaintiff notified the defendant that unless she paid the principal for June and the principal and interest for July, amounting to $46.63, by August 5, 1938, he would start proceedings against her. No request was made for payment of installments of principal due from January to May, inclusive, amounting to $88.43. Upon the failure of the defendant to make the payment requested, or any further payment, this suit was instituted August 11. In her answer the defendant does not ask that the suit be stayed until she may have a reasonable time in which to make payment, nor does she tender into court, or offer to pay, any part of the installments in arrears. But on the other hand, she asks that she be awarded recovery of the payments which she has made, plus the reasonable value of the improvements which she has placed on the property and less the reasonable rental value of the premises for the time that she has occupied the same.

We conclude that the plaintiff is entitled to equitable relief. In his prayer he asks for strict foreclosure. It does not follow, however, that the court, in granting plaintiff relief, may only decree a strict foreclosure of the contract. It may, if the exigencies and the equities of the case demand, decree a foreclosure by sale of the land: *Security Savings & Trust Co. v. Mackenzie,* supra; *Hawkins v. Rodgers,* supra.

The contract was entered into on August 16, 1937. The purchase price was $2,300, and there remains unpaid on the principal the sum of $1,923.70. To this must be added the taxes for the year 1938, amounting to $69.64, and taxes for 1939, the amount of which is not disclosed by the record but may be assumed to be at least equal to that for 1938. This will make the total of unpaid principal and taxes $2,062.98. The circuit court found that the improvements made by the defendant increased the value of the property by $193, which accordingly places it at $2,493. Subtracting therefrom the unpaid principal, there remains a difference of $430.02, representative of the defendant's equity up to that point. However, by the time the mandate in this case is entered in the circuit court the defendant will have had possession of this property for approximately twenty-six months, which, at a rental of $15 a month, found by the circuit court to be reasonable, results in a charge of $390 to be entered against the defendant. From this last sum the item of $82.75 as interest paid by the defendant under the contract is to be deducted. The net result of all these computations leaves the defendant a very small equity in the property.

It is doubtful that residential property in the condition of this in question, considering the many years

the house has been standing, could be sold on execution except at a great sacrifice; wherefore we do not believe it to be inequitable to decree strict foreclosure of the contract rather than to order a sale of the property: 17 Oregon Law Review 333. Upon careful consideration of all the circumstances of this case, we conclude that the defendant should be allowed three months after the entry of the mandate in the circuit court, in which to pay to the clerk of that court the unpaid balance of the purchase price under the contract; and that upon her failure so to do, a decree of strict foreclosure should be entered, barring her of all right, title and interest in or to the property described in the contract. In the event that she makes such payment into court, she is entitled to a deed from the plaintiff in accordance with the terms of the contract.

The plaintiff, however, is not entitled to a decree of strict foreclosure and in addition a judgment for the amount due on the contract: *Marquardt v. Fisher*, 135 Or. 256, 295 P. 499, 77 A. L. R. 265. In obtaining strict foreclosure, "the only judgment the plaintiff can have is a judgment of strict foreclosure of the rights of the vendee, unaccompanied by any personal judgment for the unpaid purchase money": *First National Bank v. Agnew*, 45 Wis. 131. To the same effect, see *Oconto Co. v. Bacon*, 181 Wis. 538, 195 N. W. 412, 40 A. L. R. 175. Nor is the plaintiff entitled to recover the reasonable rental value of the property for the time that the defendant has been in default in her payments. The contract gives the defendant possession of the real property, and by bringing suit for strict foreclosure the plaintiff admits that she is entitled to retain possession until barred finally by the decree of the court.

The decree appealed from is reversed, and one will herein be entered in accordance with this opinion; neither party to recover costs in this court.

RAND, C. J., and ROSSMAN, BELT and LUSK, JJ., concur.

---

BEAN, J. (dissenting). This is a suit to foreclose a contract by W. P. Grider against the defendant Hazel M. Turnbow, who contracted to buy a house and lots from the plaintiff for the sum of $2,300.

By this contract the vendor agreed to sell the premises for the sum mentioned, with a down payment of $300 and payments thereafter at the rate of $27.50, due and payable on the 16th of each month, until $1,500 should be paid, when the remaining $800 should be paid by the vendee, and the vendor should then give a good and sufficient warranty deed and abstract showing title. Defendant later paid $76.30 on the principal and $82.75 on the interest, and paid out the sum of $193 on painting and repairing the residence situated on the property.

After making the contract the defendant went into possession of the premises described in the contract and paid the plaintiff, to be applied on the contract as part of the purchase price of said land, as follows:

| "Date of payment | Int. | Paid to | Paid Acct. Principal | Balance Due $2000.00 |
|---|---|---|---|---|
| Sept. 20, 1937 | $9.44 | Sept. 20, 1937 | $18.06 | 1981.94 |
| Oct. 16, 1937 | 7.16 | Oct. 16, 1937 | 20.34 | 1961.60 |
| Nov. 20, 1937 | 9.54 | Nov. 20, 1937 | 17.96 | 1943.64 |
| Dec. 20, 1937 | 7.54 | Dec. 18, 1937 | 19.94 | 1923.70 |
| Jan. 18, 1938 | 7.55 | Jan. 18, 1938 | None | 1923.70 |
| Mar. 15, 1938, | ¼ Taxes paid by W. T. Grider | | | 17.41 |
| | | | New Balance | 1941.11 |

| Mar. 23, 1938 | 16.17 | Mar. 18, 1938 | None | 1941.11 |
| Apr. 23, 1938 | 9.70 (36 da.) | Apr. 23, 1938 | None | 1941.11 |
| May 20, 1938 | 7.28 (27 da.) | May 20, 1938 | None | 1941.11 |
| June 27, 1938 | 8.37 (20 da.) | June 20, 1938 | None | 1941.11" |

The trial court found in effect that the parties had mutually rescinded the contract and the court awarded Hazel M. Turnbow, the defendant, judgment and decree against the plaintiff, W. T. Grider, in the sum of $404.55, together with costs, and ordered that the same be adjudged and decreed to be a lien against the real estate described in the contract. From this decree the plaintiff appeals.

The contract contained a time-essence clause and provided for forfeiture of all payments made in the event payments were not made as provided in the contract.

Plaintiff alleges in his original complaint, as follows:

"And plaintiff has and does by these presents declare that the said contract is at an end, and the payments thereon are rentals and stipulated damages as in said contract agreed, and that the said unpaid installments are due to this plaintiff."

The defendant pleads and contends that plaintiff not only expressly waived the time of payments in accordance with the terms of the contract but impliedly waived those provisions as a matter of law in accepting payments after they were due and in the manner in which they were accepted by him.

After the contract of sale was entered into the contract was held in escrow with the La Grande Branch of the First National Bank of Portland for a short time, and one payment was made while the contract was held at the bank. Mr. Grider testified that he then turned

this entire matter over to Mr. B. A. Benham as his agent, and that Mr. Benham represented him in his entire transactions, including the arrangement with the Turnbows for the removal of the lien placed on the house. In regard to the lien that was filed on the building for the improvements that defendant made, the defendant testified that Mr. Benham told her that Mr. Grider would be satisfied if they raised the lien, that he (Grider) was mad about the lien being placed on the place, but if they could get that lien off, everything would be all right.

In the latter part of July or the forepart of August, Mr. Turnbow states that he had a conversation with Mr. Benham and that he told him when he received the money from his work he would pay the July and August interest and the principal payment for August, stating that he would receive his check about the 10th of August. He claims that Mr. Benham agreed with him that this would be satisfactory. He did not get to town until the 11th of August with his check, and, before the money could be delivered, suit was commenced. After the suit was commenced, on August 11, defendant offered to pay the interest for July and August, and the August principal, which the plaintiff refused.

Defendant paid the interest without any payment on the principal for six months, and paid three installments on the principal some time after the due date, and defendant was led to believe by Mr. Benham, the agent for plaintiff, that plaintiff was satisfied if she paid the interest.

It appears that Mr. Grider accepted partial and deferred payments without making any protest directly to defendant. Mr. Benham, the agent, made the usual endeavor to collect the payments. Soon after the plain-

tiff instituted this suit, the defendant served notice upon plaintiff that she

"hereby notifies you that she claims a mutual rescission of the same, and hereby offers to render possession to you of the said property. This rescission is claimed by reason of the illegal declaring of a forfeiture * * *."

Defendant contends that the plaintiff breached the contract by declaring the same at an end. On July 29, 1938, Mr. Benham wrote the defendant in part as follows:

"With the payment for the month of June, on which you just paid the interest, you owe $19.13—for the month of July you owe your full payments, interest and principal $27.50—these two added together makes a total of $46.63 which if not paid by August 5th, 1938, Mr. Grider will start proceedings against you."

When this suit was commenced Mr. Grider claimed there was $180.97 due him, besides a portion of the taxes for 1938. Mr. Benham's letter indicates that it was not a final notice, and perhaps that she could make a partial payment. It was not a request for payment in accordance with the contract.

The plaintiff, after giving oral consent to a postponement of the performance of the provisions of the contract in regard to payments, and waiving the strict performance of the contract and the defendant having acted on such consent and waiver, commenced suit to cancel the contract and recover the sums of $180.97 and $27.50 for each month, as rent, after August 16, 1938, together with taxes, without giving defendant any reasonable notice that if she failed to make the payments according to the contract he would declare the contract at an end and that the payments thereon would be declared as rentals and stipulated damages, or with-

out notifying her that the time-essence clause was rehabilitated.

Plaintiff claims that this is a suit to foreclose and argues "that there is no requirement that you have to give a vendee notice that you are going to foreclose the contract."

A stipulation as to the time of payment in a contract for the sale of real property is for the benefit of the vendor and may be waived by him by accepting payments other than as specified in the contract or after they become due: *Olson v. Pixler*, 138 Or. 250, 6 P. (2d) 23; *Hawkins v. Rodgers*, 91 Or. 483, 179 P. 563, 905; *Epplett v. Empire Inv. Co.*, 99 Or. 533, 194 P. 461, 700.

The time-essence clause may be waived by the vendor by his conduct, and when once waived the vendor cannot have the benefit of such clause without reasonable notice to the purchaser that the time-essence clause of such contract is rehabilitated: *Graham v. Merchant*, 43 Or. 294, 72 P. 1088; *Maffet v. Oregon & Cal. R. Co.*, 46 Or. 443, 80 P. 489; *Gray v. Pelton*, 67 Or. 239, 135 P. 755.

The plaintiff vendor waived time as the essence of the contract and did not give a reasonable notice of time in which delinquencies were to be paid. He thereby breached the contract. The defendant vendee has the right to declare a mutual rescission and recover the purchase money paid under the contract and the reasonable value of permanent improvements made: *Olson v. Pixler*, supra; *Mascall v. Erikson*, 131 Or. 509, 283 P. 2; *Johnson v. Feskens*, 146 Or. 657, 31 P. (2d) 667, 107 A L. R. 340.

Plaintiff contends, in effect, that the terms of a written contract cannot be varied by oral testimony. A party to a written contract for the sale of land, who knowingly gives an oral consent to a postponement of

the performance of some material provision. and accepts payments under the contract other than as specified in the contract after they become due, will not be permitted to insist, after the other party has acted on such consent and waiver, that such consent is void because not in writing, and to enforce the contract as originally made, even though time and the prompt performance of the deferred condition were made essential. The statute of frauds was not intended to aid in the perpetration of injustice: *Neppach v. Oregon & Cal. R. Co.*, 46 Or. 374, 80 P. 482, 7 Ann. Cas. 1035. As stated by Mr. Justice R. S. Bean in that case, there is some conflict of authority as to whether a contract, required by statute to be in writing, can be altered as to the time or manner of performance by a subsequent parol executory agreement between the parties, but we think in this case, where there is an oral extension agreement and the parties acted upon such agreement by the defendant making payments after the time they were due under the contract and the plaintiff accepting the same, that the plaintiff should not be permitted to claim that the oral extension was invalid.

Plaintiff cites 4 Page on Contracts, § 2475. After a long discussion in that volume, we find at page 4379, § 2477, the following:

"* * * A written contract for the sale of land, which provides for the time of payment, may be modified by a subsequent oral contract, changing the time for making such payment."

The courts of Massachusetts make a distinction between the contract which the statute requires to be in writing and the time of performance, to which it is held the statute does not apply.

We think the stipulation in the contract as to the time of payment by the plaintiff was for his benefit and could be waived by him, and was waived by accepting several payments after the time specified in the contract. The plaintiff left all the matters pertaining to the collection of the amounts due under the contract with Mr. Benham and we think that the delay permitted by the agent Benham, and sanctioned by the plaintiff in accepting the deferred payments, had the effect of waiving strict compliance with the contract. As said by Mr. Justice MOORE in *Durkee v. Carr*, 38 Or. 189, 63 P. 117:

"The rule is elementary and universal that every grant of power by a principal to his agent, where no limitations are apparent, is to be construed as carrying with it, as an incident thereto, the authority to do all things proper, usual, necessary, and reasonable to carry into effect the objects and purposes sought to be accomplished by the authority conferred."

Plaintiff admits that he agreed to let the payment of January and February pass, but claims that he insisted the payments must be made up immediately afterwards.

Plaintiff contends that where the contract does not provide for improvements those placed upon the real premises without the leave or knowledge of the owner, belong to the vendor. Plaintiff cites *Anderson v. Morse*, 110 Or. 39, 222 P. 1083, as authority for this claim. In that case we find, at page 56 of the report, the following statement:

"In cases where a vendee in possession of the land is allowed improvements upon a strict foreclosure, the evidence must show that the land has increased in value by reason of the alleged improvements, or that the contract provided for an allowance for improvements."

In the case at bar the contract does not provide for an allowance for improvements, but the testimony shows that the land was increased in value by reason of the improvements made by defendant, so that the place could be rented for more than it could when it was sold to the defendant. Judge Knowles, the trial judge, examined the premises in question.

Plaintiff also cites *Turnbow v. Keller,* 142 Or. 200, 206, 12 P. (2d) 558, 19 P. (2d) 1089, a suit to foreclose the vendee's rights under a contract, which plaintiffs and defendant had signed, wherein the defendant undertook to purchase from plaintiffs a parcel of real property. It was held that the testimony that Keller improved the property is fragmentary and fails to indicate that the value of the property was enhanced by anything which he did while in possession.

The case of *Rynhart v. Welch,* 156 Or. 48, 65 P. (2d) 1420, cited by plaintiff, was an appeal from a decree in favor of defendants in a suit wherein the plaintiff sought to recover for money paid and improvements made under a written contract for the purchase and sale of lands and to have the sums thus paid decreed to be a lien upon the land. Before terminating the contract the vendor wrote several letters to the plaintiff, calling her attention to her defaults and stating that unless the defaults were made good and future payments were more punctually made, she would be compelled to terminate the contract. On October 16, 1933, the vendor wrote a letter to plaintiff notifying plaintiff that she was in arrears on the payments on the contract and stated, "For these reasons, I will declare the contract null and void on November 1, 1933, unless full payments are made thereon, together with taxes." In that case plaintiff paid practically nothing

during the last two prior years, and having previously been in default it was held that the plaintiff was not entitled to relief.

In the case of *Atkochunas v. Gustafson*, 156 Or. 126, 66 P. (2d) 1192, also cited by plaintiff, which was a suit for a strict foreclosure of a land contract, there was no rescission of the contract as in the present case. Therefore the purchasers could not recover money paid under the contract. In that opinion, at page 127, we read:

"A few days prior to October 25, 1935, and while the defendants were in default under the contract, they surrendered possession of the property to a third party and gave notice to plaintiffs that they would make no further payments under the contract."

This, it seems, would preclude them from recovering payments they had made and was a direct repudiation of the contract. In the present case the plaintiff repudiated the contract by a written declaration that it was at an end.

In *Johnson v. Feskens*, supra, an opinion by Mr. Chief Justice RAND, we find, at page 662:

"It is clear from the record made in this case that in January, 1931, when defendants offered to pay plaintiffs the interest then due under the contract without at the same time offering to pay the installments then due on account of the principal, plaintiffs had the right to elect whether to rescind the contract for failure to pay the full amount then due under the contract and that, by accepting a partial payment, they elected to continue the contract in force. In making this choice of one of the two alternatives, they necessarily surrendered the other and when the later payments were made they elected to accept them rather than to rescind the contract. These payments were made and accepted up to and including July, 1932. In accepting such pay-

ments, plaintiffs surrendered the right to rescind on account of any default then or previously made. * * *"

We read further, at page 663:

"Because of the elections thus made, plaintiffs must base their right to rescind alone on defendants' failure to make any payment in October, 1932. Was this failure sufficient to entitle the plaintiffs to rescind in the absence of previous notice to defendants from the plaintiffs that the defendants would thereafter be required to strictly perform the contract? This question is answered in the negative by the decision of this court in Massey v. Becker, 90 Or. 461, 176 P. 425."

We find the following quotations on page 664:

"When the defendant wrongfully attempted to abrogate and rescind the contract, the plaintiff had the right to assent to such rescission, thereby accomplishing the same by mutual consent: 2 Parsons on Contracts, § 678; 13 C. J. § 624, p. 601; Woodard v. Willamette Valley Irri. Land Co. 89 Or. 10, 173 P. 262."

"The plaintiff and defendant both having consented to a rescission of the contract, neither can base a claim thereon except in so far as is necessary to the restoration of the *status quo*. It is the rule that when a contract of sale has been rescinded by the mutual assent and agreement of the parties, the contract is at an end, and in the absence of an agreement to the contrary, the vendee not being at fault may recover back the money paid on his contract: 2 Black on Rescission, 535; 2 Warvelle on Vendors, § 826; 13 C. J. § 627, p. 602."

In the Johnson case, the court continues: "The case at bar is very similar to *Olson v. Pixler*, 138 Or. 250 (6 P. (2d) 23); * * *."

In *Gray v. Pelton*, 67 Or. 239, 135 P. 755, the syllabus reads:

"Where a vendor in a contract calling for payments on designated dates, and making time of the essence,

clearly indicated that he intended to be lenient in the matter of payments, and did not require a strict compliance in making some of the payments, and thereby the purchaser and his assignee believed that future payments on the exact dates named in the contract would not be required, and the conduct of the vendor was consistent only with a purpose on his part to regard the contract as subsisting after the first default, he waived his right to declare a forfeiture, and to avail himself of the time clause he must give the purchaser a reasonable and specific notice to comply with his agreement and make payment.''

See also *Massey v. Becker*, 90 Or. 461, 176 P. 425, where the syllabi read:

''4. When seller wrongfully attempted to rescind, having elected by acceptance of a payment after buyer's default to consider contract still in force, buyer had the right to assent to such rescission, thereby accomplishing it by mutual consent.

''5. Where buyer and seller both consented to rescission, neither can base claim thereon except in so far as it is necessary to restoration of the *status quo*; rescission by mutual agreement ending contract.

''6. Where sale contract is rescinded by mutual consent, the buyer may recover back what he has paid.''

In *Mascall v. Erikson*, supra, we read at page 516:

''The doctrine is well supported that when the parties voluntarily agree to rescind a contract, there being no express stipulation with reference to payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same. * * *''

And the court further holds that the vendee is accountable for reasonable rental value of the premises.

In the instant case, the contract of sale and purchase provided:

"It is further agreed that time is the essence of this contract, and in case of default of the party of the second part as to the payments herein mentioned, or as to any of the covenants contained therein, then this contract, at the option of the party of the first part, may declare this contract null and void, and in such case all the rights created or then existing in favor of the second party as against the first party shall utterly cease and determine and the right of possession of the premises and all other rights acquired by the second party hereunder shall revert and revest in the said first party  *  *  *."

Notwithstanding that plaintiff had waived this provision of the contract, he is attempting in this suit to forfeit all payments made by the defendant and to enforce this provision of the contract which had been waived or suspended by plaintiff, and the contract is of the same force and effect as though that provision was not contained therein.

In Pomeroy on Contracts, § 396, in regard to a notice to repudiate a contract that had been waived by accepting payments after the due date, it is said:

"The notice cannot be an arbitrary and sudden termination of the transaction; it cannot put an immediate end to a pending dispute or negotiation as to the title; it must allow a reasonable length of time for the other party to perform, and if it fails in any of these respects, it may be disregarded,  *  *  *. The notice, also, to be effectual in making the time allotted an essential element of the performance, must be express, clear, distinct and unequivocal."

We find in 2 Black on Rescission and Cancellation, (2d Ed.) 1127, § 440, as follows:

"* * * But to effect a rescission (as distinct from a forfeiture under a clause in the contract giving that right) the vendor must return to the vendee the amount of the purchase money which he has paid, plus the value of any permanent improvements which he may have placed upon the land, less the damages which have been occasioned to the vendor by the vendee's failure to perform the contract."

In 3 Black on Rescission and Cancellation, (2d Ed.) 1539, § 636, we find:

"In the accounting which should take place upon the rescission or cancellation of a contract for the sale of land, the vendee, having been in possession, will ordinarily be entitled to a proper allowance for the expense incurred by him in making valuable and permanent improvements. Or he may physically remove from the premises improvements which he has placed thereon, if this is practicable and if it can be done without injury to the freehold, * * *."

The contract having been terminated, the parties should be placed in *status quo,* as far as possible.

The court allowed plaintiff $15 per month rental for the occupancy of the house by defendant. We think this was a fair and equitable allowance.

The court's decree provided: "That upon payment of said sum by the plaintiff to the defendant, with her costs and disbursements as taxed herein, that she shall surrender immediately the possession of said premises to the plaintiff, * * *." The decree should be changed so as to require defendant to immediately surrender the possession of said premises to plaintiff. This slight change, however, should not vary the judgment in the

matter of costs and disbursements, and the defendant is entitled to her costs and disbursements upon this appeal and in the trial court. Except for this slight modification, the decree of the circuit court should be affirmed.

KELLY, J., concurs in this dissent.