Argued February 8; affirmed March 7, 1944

# NIELSEN *v.* BALDRIDGE ET UX.

(146 P. (2d) 754)

556

Before BAILEY, Chief Justice, and BELT, ROSSMAN, BRAND and HAY, Associate Justices.

*William J. Cooper,* of Gresham, and *C. G. Schneider,* of Gresham (Cooper & McAllister, of Gresham, on the brief), for appellant.

*Loyal H. McCarthy,* of Portland (Frederick S. Wilhelm, of Portland, on the brief), for defendants-respondents and intervenor-respondent.

ROSSMAN, J.

This is an appeal from a decree of the circuit court which held that Kenneth A. and Virginia M. Palmer, husband and wife, and their assignees, the defendants in this case, fully discharged the burdens imposed upon the said Palmers by a contract which the plaintiff,

as vendor, and the Palmers, as vendees, signed December 11, 1941. That contract, as appears from the decree, provided that the plaintiff would convey the property involved in this proceeding to the vendees or their assigns upon payment to the plaintiff of $1,000 in monthly installments and upon the vendees' assumption of a mortgage in the amount of $650 which encumbered the property. The decree found that the sums paid to the plaintiff and those tendered into court, together with the assumption of the mortgage by the vendees, fully discharged all burdens which the contract imposed upon the vendees. It held that the defendants were entitled to delivery to them of a deed to the property, which was placed in escrow concurrently with the execution of the contract. The aforementioned Virginia M. Palmer, as intervenor, is a party to this suit.

One of the provisions of the contract follows:

"It is further agreed that no assignment of this contract shall be valid except by consent of the party of the first part, in writing, first obtained."

The plaintiff did not consent in writing to the assignment of the contract to the defendants, and the absence of the writing is the sole basis of the plaintiff's contentions in this court.

A review of the pleadings will be helpful. This proceeding was begun as an action at law for the recovery of the possession of the property described in the complaint and for judgment for its rental value during the period of the defendants' possession. The answer, after denying the averments of the complaint, alleged as the basis of equitable relief that (a) December 11, 1941, the paintiff, as vendor, and Kenneth A.

and Virginia M. Palmer, husband and wife, as vendees, signed the contract which we have already mentioned; (b) a copy of that contract and a deed to the Palmers were placed in escrow with the Gresham Branch of The First National Bank of Portland December 11, 1941; (c) July 9, 1942, Kenneth A. Palmer, for a valuable consideration, assigned his interest in the contract to his wife; (d) December 24, 1942, the wife (Virginia) obtained a decree of divorce from her husband; (e) August 15, 1942, Virginia M. Palmer sold her interest in the property to the defendants and assigned the contract to them; (f) August 15, 1942, the defendants entered into possession of the premises and, with the plaintiff's knowledge, proceeded to make improvements to it at an expense to themselves of $2,000; (g) all sums currently due upon the contract and the assumed mortgage have been discharged; (h) there remains unpaid to the plaintiff $620 upon the sum of $1,000 originally payable to her; (i) "the defendants herewith tender into court the balance of the purchase price of Six Hundred and Twenty ($620.00) Dollars * * * together with interest * * *;" and (j) "by reason of all the aforesaid facts the plaintiff has waived any right to claim said premises, * * * and should be required to direct the Gresham Branch of The First National Bank of Portland to deliver the deed heretofore executed by the plaintiff to the said Virginia M. Palmer." The answer ended with a prayer for specific performance of the contract of purchase in the form of delivery to Virginia M. Palmer or the defendants of the deed which the plaintiff had placed in escrow.

The reply denied the affirmative averments of the answer and alleged (a) the provision of the contract which provided that no assignment of it would

be valid unless accompanied with a written approval of the plaintiff; (b) that the Palmers, or one of them, without the knowledge of the plaintiff, on August 15, 1942, "attempted to assign said contract to the defendants", but that the assignment lacked the plaintiff's written consent; (c) "that the defendants have paid to the Clackamas County Bank at Sandy, Oregon, the sum of $132.58 to apply on principal and interest on the mortgage held by it against the real property described in said contract"; (d) that "there has been deposited by defendants in The First National Bank of Portland, Gresham Branch, the sum of $253.08 for principal and interest on the $1,000 balance due to the plaintiff"; (e) "that the said Gresham Branch of The First National Bank of Portland has tendered to this plaintiff its Cashier's Checks of the dates and in the amounts as follows: * * * in the total sum of $253.08, all of which Cashier's Checks the plaintiff has refused to accept and cash, and offered to return the same to the said bank, which return the said bank has refused to accept"; and (f) "that the plaintiff hereby tenders to the defendants the return of the sum of $132.58, the amount paid to the Clackamas County Bank at Sandy, Oregon, and endorsed as sundry payments on said mortgage, and tenders to the defendants the return of the said several Cashiers' Certificates as above listed, and herewith deposits the same with the Clerk of this Court."

Shortly after the answer the aforementioned Mrs. Palmer filed a complaint in intervention, the substance of which was substantially the same as the new matter set forth in the answer. It prayed that "the plaintiff be required to deliver to this intervenor, or the defendants, the deed to the property described in her

complaint * * *." The plaintiff's answer to the pleading just mentioned denied all of its averments, and, referring to the contract of December 11, 1941, alleged that Mrs. Palmer, "in violation of the terms of said contract, executed and delivered to the defendants herein an assignment of the said contract." It averred that before August 15, 1942, Mrs. Palmer breached the contract through failure (a) to maintain the payments required by it, and (b) through failure (1) to pay sums due upon the mortgage; (2) to discharge taxes assessed against the property; and (3) to maintain insurance for the protection of the property. The prayer of the answer follows: "Plaintiff prays judgment against the intervenor, Virginia M. Palmer, for the strict foreclosure of the said contract * * *." The reply was substantially a denial of the averments of the answer just mentioned.

The facts disclosed by the evidence are substantially those averred in the answer which was filed by the defendants Baldridge. In fact, the evidence showed an overpayment to the escrow bank of $28.10. No evidence was presented showing a default in the payment of taxes or in the maintenance of insurance.

By reverting to the answer it will be seen that it says that the defendants, with the plaintiff's knowledge, improved the property at an expense to themselves. When the defendants bought the property there stood upon it a six-room dwelling house which was incomplete. There were no plumbing fixtures in the house and the roof was only partially shingled. The outside of the house lacked the finish lumber and, although the inside partitions had been set, that part of the work had gone no further. Other items of the work, such as the hanging of window weights, were

also incomplete. The defendants immediately after August 15 began the work of completion and in its course spent more than $900 for materials. The plaintiff denied that she was aware of this work while it was in progress, but evidence, which appeals to us as reliable, indicates that she must have known of what was going on. Whether or not she was actually aware that the defendants were improving the property, we deem as not of controlling importance.

The assignments of the above contract were as indicated in the answer. Kenneth A. Palmer, July 9, 1942, by written instrument, transferred his interest in the property and in the contract to his wife. December 24, 1942, she obtained a divorce from him. Seemingly, the assignment of the contract from husband to wife was part of a property settlement. August 15, 1942, the defendants desired to purchase Mrs. Palmer's interest in the property, provided the contract which the Palmers and the plaintiff had signed did not prevent Mrs. Palmer from selling. In order to ascertain the facts concerning that matter, Mr. C. H. Fleming, who was the employer of the defendant, Charles C. Baldridge, and a friend of the two defendants, inquired at the escrow bank whether Mrs. Palmer could sell her interest in the property and received an affirmative reply. Thereupon Mrs. Palmer assigned her interest in the contract to the defendants for a consideration of $200. The validity of that assignment is not questioned except for the absence from it of a written approval by the plaintiff. The manner in which the defendants sought to assure themselves that Mrs. Palmer's interest in the property was transferable indicates that they were acting in good faith.

Immediately after the defendants received the written assignment of the aforementioned contract they took possession of the property and proceeded with the course of improvements which we have already mentioned.

We come now to the payments which the defendants made to the plaintiff after Mrs. Palmer had assigned the contract to them on August 15, 1942. The escrow instructions to the Gresham Branch of The First National Bank of Portland, which were signed and delivered to the bank concurrently with the execution of the contract of December 11, 1941, said in part:

"You are authorized and empowered to accept any payments tendered to you to apply upon this contract whether such payment constitutes all or only a portion of any installment and whether or not it or any installment, or the performance of any other obligation of the purchasers, is at that time in default, as long as the instruments remain in your possession."

It will be recalled that Mrs. Palmer, August 15, 1942, assigned her contract with the plaintiff to the defendants. August 21, 1942, the defendants paid to the escrow bank $62.50, principal money, and $10.70, interest. Referring to those payments, the plaintiff testified: "Then I received a statement from the bank saying Mr. Baldridge had paid me $50, and then I knew Virginia had sold the place without my consent." By "the bank" the plaintiff referred to the escrow bank, and, of course, she meant Mrs. Palmer when she employed the name "Virginia." By "them" she referred to August 21, the day the defendants paid to the bank the aforementioned sums of money. Just prior to that day the plaintiff, on account of

Mrs. Palmer's neglect to discharge two monthly payments, requested her attorney to effect a revocation of the contract by going to the escrow bank and demanding a return of the papers which it held. The attorney, however, believed that the plaintiff ought to wait for a few days and shortly after he gave that advice the defendants made the aforementioned payments. The words quoted from the plaintiffs testimony show that on August 21 the plaintiff knew that Mrs. Palmer had transferred her interest in the property to the defendants, and that the latter had paid to the escrow bank the sums which it received for her as escrow agent.

December 30, 1942, the complaint in this action was filed. Between that day and August 21, 1942, when the plaintiff received the statement from her escrow agent showing its receipt from the defendants of their initial payment, the defendants made the following additional payments to the bank:

August 25, 1942, $12.50 principal

September 14, 1942, $37.50 principal and $2.77 interest

September 28, 1942, $3.85 interest

October 13, 1942, $37.50 principal and $6.41 interest

November 9, 1942, $37.50 principal and $6.23 interest

December 9, 1942, $37.50 principal and $6.04 interest.

In the same period the defendants made the payments to the mortgagee which the reply concedes.

September 4, 1942, an attorney, on behalf of the plaintiff, addressed to Charles C. Baldridge, one of the defendants and husband of the other, a letter in which he demanded that the defendants surrender

"possession of the premises which you now occupy under an assignment or alleged assignment from Kenneth A. Palmer and Virginia M. Palmer or either of them." The letter added: "You are advised that Mrs. Nielsen has neither been consulted relative to an assignment in your favor or in the favor of anyone else * * *. You are, therefore, in the possession of these premises in direct violation of the terms of the purchase agreement." The letter made no offer to return the payments which the defendants had made to the escrow bank and to the mortgagee; in fact, it made no mention whatever of those payments. Likewise, it made no effort to revoke the contract; to the contrary, it recognized the contract as a subsisting one. Although this letter was addressed to the Baldridges' home (the property in question) and was sent by registered mail, it was not delivered until October 1, 1942, when it was handed to the aforementioned C. H. Fleming. At that time Baldridge was working outside the city of Portland and was not scheduled to return for two weeks.

Whether the sums paid by the defendants to the escrow bank were delivered by it into the plaintiff's hands, whether they were deposited by it to her credit, or whether the plaintiff merely permitted the payments to remain with her escrow agent, was not disclosed by her when she testified. It is clear, however, that the sums paid to the mortgagee were credited upon the mortgage note. It was not until the plaintiff filed her reply that she announced an adverse attitude toward the payments which the defendants had made upon the obligation. The pleading, as we have seen, tendered to the defendants a return of the payments. It says nothing, however, about the

substantial sums which the defendants spent in completing the construction of the dwelling house.

▇ We have mentioned the fact that the reply which the plaintiff filed to the pleading of the intervenor "prays judgment against the intervenor, Virginia M. Palmer, for the strict foreclosure of the said contract." By praying for a foreclosure of the contract, the plaintiff, of course, deemed the contract to be a subsisting one which conferred upon the vendee a correlative right to redemption: 37 Am. Jur., Mortgages, § 535, p. 35; *Grider v. Turnbow,* 162 Or. 622, 94 P. (2d) 285; and *Atkochunas v. Gustafson,* 156 Or. 126, 66 P. (2d) 1192. By appealing to the equitable jurisdiction, the plaintiff must be deemed to have submitted herself to the court's discretion as to what is necessary, so that justice may be done to all parties under equitable principles: *Flanagan Estate v. Great Cent. Land Co.,* 45 Or. 335, 77 P. 485.

▇ The restriction of the contract, which prevented its assignment without the written consent of the plaintiff, authorized the latter to refuse to accept the defendants as assignees of the contract if she chose to do so. The contract, however, did not afford her the privilege of accepting their money with knowledge that they claimed to be the assignees of the contract and at the same time refuse to recognize that a privity of contract existed between her and them. The decision in *Cross v. Campbell,* et al, announced two weeks ago, reiterated and employed the familiar principle that a provision of a contract which subjects its assignment to the written consent of the promisee is one which may be insisted upon or waived by the promisee as the latter sees fit. That decision cited among other au-

thorities *Smith v. Martin*, 94 Or. 132, 185 P. 236, in which this court said:

> "The provision against assignment without the consent of the seller is made for his benefit and, like all other provisions in favor of a party, he may waive it if he chooses. * * * Moreover, he accepted the benefits of the unauthorized agreement, by receiving the credit for the payments made on the mortgages by the defendant company. As we view the testimony, the waiver of this condition on behalf of Smith is established and the company occupies the position of Eatinger, the original party to the contract. * * * Moreover, as the condition about the nonassignability of the contract was waived, its violation does not amount to a default."

For other authorities to like effect, see Williston on Contracts, Rev. Ed., § 422, footnote 5. August 21, 1942, when the plaintiff received the statement from the escrow bank informing her that the defendants had made to her escrow agent a payment upon the contract, the duty devolved upon her to determine whether she would accept the defendants as assignees of the contract or reject them. If it be said that she was not called upon to make her choice that moment, the occasion repeated itself four days later when the defendants paid to her escrow agent $12.50 upon principal. Upon neither occasion did the plaintiff reject anything, nor did she tell either the defendants or the bank that she disapproved of the defendants as assignees of the contract. To the contrary, she permitted her escrow agent to continue to accept payments, and, since the instructions directed the escrow bank "to credit to the commercial account of Marion Nielsen (plaintiff) the residue of such payments," we assume, in the absence of indications to the contrary, that that

course was pursued. In the meantime, the plaintiff's efforts to revoke the contract were abandoned, and the defendants proceeded with the completion of the house. It will be recalled that the letter written by the plaintiff's attorney to the defendants made no mention of the moneys which they paid upon the obligations and tendered back nothing.

The rights of the vendees in the contract before us were assignable, in the absence of stipulation to the contrary: Williston on Contracts, Rev. Ed., § 412, footnote 14, and Restatement of the Law, Contracts, § 161. It is our belief that by adopting the course described in the preceding paragraph, the plaintiff waived the provision of the contract which authorized her, if she chose, to reject the defendants as assignees, and constituted an acceptance of the defendants as the assignees of the contract. No discussion is required to show that her course also estopped her from questioning the assignment.

Although the conclusion just announced would in itself authorize an affirmance of the decree attacked by this appeal, there are other insurmountable difficulties which stand in the way of the plaintiff-appellant. We shall mention one of them. The contract, although affording the plaintiff the privilege of rejecting assignees, contained no provision which forfeited the contract in the event of an unauthorized assignment. The paragraph under consideration, so far as we can discern, was inserted as additional security for the plaintiff, assuring her performance of the contract by the vendees. As we have stated, the defendants punctually made all current payments exacted by the terms of both the mortgage and the contract; in fact, they overpaid the contract. In addition,

the defendants tendered to the plaintiff the entire balance due upon the contract and sought to discharge the balance due on the mortgage, but met with a rejection of their tendered money by the mortgagee-bank which preferred to let its money remain invested in the mortgage. There can be no question about the sufficiency of the tender, for the plaintiff's own brief says: "The defendants tendered into Court the balance unpaid on the contract, which the plaintiff refused to accept."

From the annotation in 35 L. R. A. (N.S.) 1064, we quote:

"By the great weight of authority, where a provision in a contract for the sale of real estate against the assignability of a contract without the consent of the vendor is not followed by any provision providing for the forfeiture of the contract if it is assigned in violation of such provision, the assignment of the contract at a time when the entire purchase price is due, and is tendered by the assignee, does not operate to forfeit the contract, and is not a valid excuse for the vendor's refusal to carry it out."

The following is taken from the annotation in 26 Ann. Cas., p. 230:

"The reported case is opposed to the weight of authority by which it is held that where complete performance of a contract for the purchase of lands is tendered by the purchaser or his assignee, a provision in the contract of sale prohibiting its assignment without the consent of the vendor becomes inoperative, and the assignee may compel the vendor to carry out his contract."

From *Johnson v. Eklund,* 72 Minn. 195, 75 N. W. 14, we quote:

"It will be noted that there is no provision that an assignment without Eklund's written approval

should forfeit the contract, or give the vendor the right to declare it forfeited; and certainly the courts will not read any such right into the contract by implication. There is nothing personal in the nature of the contract. All that the vendor was interested in was the payment of the purchase money at maturity. If he received this, it was wholly immaterial to him who paid the money or who got the land. At most, this stipulation against an assignment is merely collateral to the main purpose of the contract, designed as a means of securing an enforcing performance of what was undertaken by the vendee, to wit, the prompt payment of the purchase money. When the vendor has received all his purchase money, he has received all that he is entitled to, and all that the provision against an assignment was intended to secure. Under such circumstances, the fact that the assignment to plaintiff was not countersigned by the vendor is no defense to an action by her to compel a conveyance.''

In *Wagner v. Cheney,* 16 Neb. 202, 20 N. W. 222, the court said:

''Where, however, as in this case, there was an absolute sale of the property, and the terms of the contract have been fully complied with by the purchaser or his assignee, it is no defense to an action for specific performance to allege that the defendant did not give his consent to the assignment. There is no claim or pretense, nor indeed could there be, that the contract is forfeited, or that the defendant's security is impaired in any manner by the assignment.''

The following, said in *Grigg v. Landis,* 21 N. J. Eq. 494, is much quoted:

''But I apprehend such collateral covenant will never be thus enforced, where it appears upon the face of the contract that the prohibition to assign-

ment is not the main purpose of the covenant, but a mere incident to a security for such purpose. It is the province of a court of equity to ascertain what is, in truth, the real intention of the parties, and to carry that into effect. What is the objection to making an assignment of the contract to Mr. Grigg, or any other person, as it appears on the face of the agreement? Not personal, surely. * * * When these terms are fulfilled, a warranty deed, in fee simple, clear of all encumbrance, was to be given to the purchaser by the terms of the contract. And why not to the assignee of such purchaser? The contract is assignable in equity and the assignee has all the equitable rights of his assignor, unless restrained by the terms of this covenant. It would be inequitable to make the incident the principal point in the covenant."

■ We know of no reason whatever for not applying in this suit the principles which controlled the cases from which we have just quoted. The contract before us has not been terminated. All of its fruits are either in the plaintiff's hands or have been tendered to her. What she already possesses, together with the tendered sums, constitute the maximum yield of this contract. It can produce nothing more for her, and therefore an affirmance of the attacked decree will lose nothing for her. But covenants of the same contract which exacted from this property the sum which the plaintiff deemed its full value bound her, upon the payment or tender of that sum, to order the escrow agent to deliver the deed which it possesses. So far as we can learn from the record, the plaintiff's only reason for withholding the delivery of the deed is a desire to save the property for her son. That reason is a confirmation of our impression that the sole purpose of the clause, which restricted assignments to her approval, was to assure her that the

vendees would fulfill their promises. We are completely satisfied that, since that clause has fully discharged its purpose, it constitutes no reason for withholding a conveyance from the defendants.

■ The attacked decree directs the plaintiff to convey title to the intervenor, in the event the plaintiff still prefers not to convey to the defendants. If there is any error in the decree, it is the presence of that alternative clause; but that error is not prejudicial to the plaintiff. The defendants make no complaint concerning it.

The decree is affirmed.